**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**Criminal Number: 15-20652**
**Hon. George Caram Steeh**

**V.**

**D-5 QUINCY GRAHAM,**

**Defendant.**

_____/

## DEFENDANT QUINCY GRAHAM'S MOTION TO PRECLUDE THE GOVERNMENT'S USE OF RAP LYRICS AND RAP VIDEOS AT TRIAL

Defendant, Quincy Graham, ("Mr. Graham") by his attorney, Michael A. Rataj, and moves this Honorable Court to preclude the Government's use of "rap" lyrics and "rap" videos at trial. Specifically, Mr. Graham submits the Government should not be allowed to introduce into evidence the 24 "rap" songs, "rap" lyrics and "rap" videos into evidence, which are labeled as: (1) 56 FMB DZ ft. Sada, (2) Cocaine Sonny ft. Berenzo & Block – Murda, (3) Cocaine Sonny ft. HardWork Jig & Berenzo – I Hust, (4) HardWork Jig – Welcome to HOB City intro, (5) HardWork Jig – I'm Working, (6) HardWork Jig ft. Cocaine Sonny – OG, (7) HardWork Jig – Life Behind the Lens, (8) RO Da Great Ft. Bo Bands – These Niggas Dead, (9) Ro Da Great ft. Real Street – 8s Up, (10) Ro Da Great ft. King Ray – Aint No Bro Ing, (11) Ro Da Great ft. ADA Skippo – Bleek, (12) Ro Da

1

Great ft. Whoa Nelly, Bo Bands, Black – ESPN Anthem, (13) Ro Da Great ft. Diallo Ve – Hate On Me, (14) Ro Da Great ft. Pillz Med – Make The News, (15) Ro Da Great ft. Berenzo – Mobsters, (16) Ro Da Great ft. Good Jet, Product – Not Runnin From Shit, (17) Ro Da Great ft. Ca$hout Ant – On The Block, (18) Ro Da Great ft. Steven B The Great – Street Love, (19) Ro Da Great – Intro, (20) Ro Da Great ft. Ca$hout Ant – They Hate Me, (21) Ro Da Great ft. Bo Bandz, Bellz, Flight Team Rich – We On The Grind, (22) Ro Da Great ft. Berenzo, Lee Ferg – Welcome To The Streets, (23) 4shoMagcom Presents – 55 Dubb, (24) THESTING – 55 DUBB GREATEST SHOW ON EARTH 5.

In support of this motion, Mr. Graham relies upon the arguments set forth in the attached Brief in Support. The Government does not concur with this motion.

WHEREFORE, Defendant, Quincy Graham, respectfully requests that this Honorable Court preclude the Government's use of "rap" lyrics and "rap" videos at trial.

Respectfully submitted,

*/s/ Michael A. Rataj*
MICHAEL A. RATAJ (P43004)
Attorney for D-5 Quincy Graham
500 Griswold Street, Ste. 2450
Detroit, MI 48226
Phone: (313) 963-4529

Dated: July 31, 2017

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**Criminal Number: 15-20652**
**Hon. George Caram Steeh**

**V.**

**D-5 QUINCY GRAHAM,**

**Defendant.**

_____/

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO PRECLUDE THE GOVERNMENT'S USE OF
## RAP LYRICS AND RAP VIDEOS AT TRIAL

## TABLE OF CONTENTS

Page

STATEMENT OF ISSUE ............................................................................ i

STATEMENT OF CONTROLLING AUTHORITY ............................... ii

I.    INTRODUCTION ................................................................. 1

II.   RAP LYRICS ARE ENTITLED TO HEIGHTENED
      PROTECTION UNDER THE FIRST AMENDMENT ................. 5

      A. RAP LYRICS ARE PROTECTED SPEECH UNDER THE
      UNITED STATES CONSTITUTION ........................................ 5

      1. Rap Lyrics, As Artistic Expressions, Are Protected Under
      the First Amendment ................................................................. 5

      2. The Rap Lyrics Constitute Political and Social Discourse
      Entitled To Heightened Scrutiny ............................................... 7

      B. UPON TAKING THE APPROPRIATE CONSTITUTIONAL
      ANALYSIS, THIS COURT SHOULD DENY THE
      ADMISSIBILITY OF THE RAP LYRICS AND RAP VIDEOS
      AS "ABSTRACT BELIEFS" NOT PROBATIVE OF ANY
      MATERIAL ISSUE ................................................................. 12

III.  THE PREJUDICIAL EFFECT OF ADMITTING THE RAP
      LYRICS AND RAP VIDEOS INTO EVIDENCE WOULD
      SUBSTANTIALLY OUTWEIGH THE PROBATIVE VALUE
      OF SUCH EVIDENCE UNDER RULE 403 .................................. 13

IV.   RELIEF REQUESTED ................................................................. 16

## STATEMENT OF ISSUE

WHETHER THIS HONORABLE COURT SHOULD PRECLUDE THE GOVERNMENT FROM ADMITTING INTO EVIDENCE "RAP" LYRICS AND "RAP" VIDEOS IN VIOLATION OF THE DEFENTANTS' FIRST AMENDMENT RIGHT TO FREE SPEECH AND FREE ASSOCIATION.

## STATEMENT OF CONTROLLING AUTHORITY

U.S. Const. amend. I, and Fed. R. Evid. 403 are the controlling authorities here.

## I.    INTRODUCTION

Mr. Graham's Motion focuses on a form of political and social expression, one specifically associated with a minority group subjected to discrimination, heightening the need for scrutiny of the Constitutional implications. In recognition of the protection the First Amendment provides, Mr. Graham asks this Honorable Court to preclude the Government from admitting into evidence the 24 "rap" songs, "rap" lyrics and "rap" videos provided to the Defense and previously identified in Mr. Graham's Motion. It is anticipated that the Government will attempt to use the aforementioned rap lyrics and rap videos to establish the existence of a criminal enterprise and to otherwise show that the Defendants are criminals.

There is little doubt many would find the "rap" lyrics at issue here offensive. As is particularly common in the "gangsta" sub-genre of "rap," the lyrics are profanity-laden, and replete with misogynistic, sexist, and racist language, images, and epithets. The lyrics and videos graphically depict a world of brutal and unremitting violence. However distasteful, these are artistic expressions entitled to Constitutional protection. Further, they are expressions of political and social commentary, sitting on the highest rung of First Amendment hierarchy. *See Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011).

1

As Brown University Professor Tricia Rose explains:

Rap music brings together a tangle of some of the most complex social, cultural, and political issues in contemporary American Society. Rap's contradictory articulations are not signs of absent intellectual clarity; they are a common feature of community and popular cultural dialogues that always offer more than one cultural, social, or political viewpoint. These unusually abundant polyvocal conversations seem irrational when they are severed from the social contexts where everyday struggles over resources, pleasure, and meanings take place.

Rap music is a black cultural expression that prioritizes black voices from the margins of urban America…. From the outset, rap music has articulated the pleasures and problems of black urban life in contemporary America. Male rappers often speak from the perspective of a young man who wants social status in a locally meaningful way. They rap about how to avoid gang pressures and still earn local respect, how to deal with the loss of several friends to gun fights and drug overdoses, and they tell grandiose and sometimes violent tales that are powered by male sexual power over women.

Tricia Rose, *Black Noise: Rap Music and Black Culture in Contemporary America*

2 (1994).

"Rap" is generally written in the first person, filled with violent metaphors and often tells a violent "yarn." Andrea Dennis, *Poetic (In)Justice? Rap Music Lyrics as Art, Life, and Criminal Evidence*, 31 *Colum. J.L. & Arts* 1, 22-23 (2007). The fact that a "rap" artist wrote his lyrics in the first person is no more reason to ascribe him the acts and conduct described in the lyrics than to ascribe Gulliver's beliefs to Swift or Nick Carraway's beliefs to Fitzgerald. A "rap" artist who writes lyrics seemingly embracing the world of violence is no more reason to impute to

2

him a motive and intent to commit violent acts than to saddle Dostoevsky with Raskolnikov's motives, or to indict Johnny Cash for having "shot a man in Reno just to watch him die." A-Z Lyrics, http://www.azlyrics.com/lyrics/johnnycash/folsomprisonblues.html (last visited July 14, 2017). The fact is artistic expressions like those of Swift, Fitzgerald, Dostoevsky, and Cash have never been used by prosecutors to ascribe "motive and intent" to criminal defendants, but those of "rap" artists have been. Similarly, unlike "rap," courts have embraced other forms of artistic expression that contain graphic depictions of sex, violence, and criminal behavior.  Even violent video games are protected by the First Amendment.  See, *Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011).

In her book *The New Jim Crow: Mass Incarceration in the Age of Colorblindness*, Ohio State University law professor Michelle Alexander attributes the emergence of "rap," and "gansta rap" in particular, to the stigmatization of inner-city black youth's being labeled "criminal" in numbers grossly disproportionate to their population. Michelle Alexander, *The New Jim Crow: Mass Incarceration in the Age of Colorblindness* 171-75 (2012). This "mass incarceration," Professor Alexander argues, has a vast effect on every aspect of black life, leading to a downward spiral of denials of employment, housing, public benefits and the right to vote, spurring black men to identify with criminals by

3

writing "rap" music. *Id.* at 174-75. In this context, it seems a cruelly ironic contribution to the vicious cycle of mass incarceration for "rap" music to be singled out as a medium of artistic expression capable of supporting criminal convictions.

Pursuant to the First Amendment, "rap" lyrics and "rap" videos are entitled to First Amendment protection. The issues raised in this motion merit a constitutional analysis independent of that implicated by the evidentiary rules, in accordance with the controlling authority of *Dawson v. Delaware*, 503 U.S. 159 (1992).

A First Amendment analysis should lead to a providing of "breathing space" for this art form. Accordingly, for these reasons as more fully presented below, Mr. Graham respectfully urges this Court to exclude such evidence, as it could lead to a "conviction that may [] rest[] on a form of expression, however distasteful, which the Constitution tolerates and protects." *Street v. New York*, 394 U.S. 576, 594 (1969). Further, the Defense asks this Court to recognize the significant free speech and free association overlay in cases such as this, and adhere to a more stringent set of standards in admitting into evidence fictional and artistic expressions.

4

## II.   RAP LYRICS ARE ENTITLED TO HEIGHTENED PROTECTION UNDER THE FIRST AMENDMENT

The admission of "rap" lyrics into evidence to demonstrate a "motive and intent," or "gang affiliation," violate a defendant's right of free expression under our federal Constitution. The issues at stake merit an analysis expressly recognizing the Constitutional implications.

### A.   Rap Lyrics Are Protected Speech Under the United States Constitution

Freedom of speech and expression are protected under the First Amendment to the United States Constitution. The United States Constitution contains prohibitions against abridging the liberty of speech. In this case, when viewed under the First Amendment, "rap" lyrics and "rap" videos are protected speech, and should not be admitted into evidence against a criminal defendant.

### 1.   *Rap Lyrics, As Artistic Expressions, Are Protected Under the First Amendment*

The free speech clause is not limited to conduct that communicates a political, social, philosophical or religious message. Rather, it applies to all "expressive conduct," including "artistic expression such as painting, music, poetry and literature." *See Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569 (1995); *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989).

5

As Professor Andrea Dennis noted, "Courts do not acknowledge that defendants authoring rap music lyrics are engaging in an artistic process that challenges everyday expectations regarding language." Dennis, *supra*, 31 *Colum. J.L. & Arts* at 13-14. She continues:

> Similar to other art forms, rap lyrics have their own artistic or poetic conventions. The use of these conventions is commonly understood in more traditional arts such as fiction writing and poetry.

*Id.* at 20. *See also* Rose, *supra* at 55: "The most frequent style of rap was ... a boastful, bragging form of oral storytelling sometimes explicitly political and often aggressive, violent and sexist in content."

Professor Tricia Rose has described the "rap" artistic techniques:

> Rappers tell long, involved, and sometimes abstract stories with catchy and memorable phrases and beats that lend themselves to black sound bite packaging, storing critical fragments in fast-paced electrified rhythms.... For rap's language wizards, all images, sounds, ideas, and icons are ripe for recontextualization, pun, mockery, and celebration.

Rose, *supra* at 3.

The lyrics at issue here precisely fit such a pattern. Many of the lyrics depict a world where violence is so intense and all too prevalent it makes the reader hold his or her breath. True to the 'boast," the lyrics contain "exaggerated and invented boasts of criminal acts." Dennis, *supra*, 31 *Colum. J.L. & Arts* at 22. Whether the lyrics depict actual events is unknown. But what is clear is that these are artistic

6

expressions, filled with rhyme written in an almost perfect meter. The rhymes are creative, and the narrative is filled with vivid, if violent, metaphors and similes.

What the lyrics do not describe is anything that Mr. Graham, or the other Defendants actually did, or meant to convey as non-fiction. They are no more relevant to the Defendants' general "motive and intent" than would be the lyrics of "I Shot the Sheriff" to Bob Marley's, Lyrics Freak, http://www.lyricsfreak.com/b/bob+marley/i+shot+the+sheriff_20021744.html (last visited July 14, 2017); those of "Maxwell's Silver Hammer" to Paul McCartney's (Metro Lyrics, http://www.metrolyrics.com/maxwells-silver-hammer-lyrics-beatles.html (last visited July 14, 2017); or those of "Bohemian Rhapsody" to Freddy Mercury's ("Mama, just killed a man. Put a gun against his head. Pulled my trigger, now he's dead." Queen Words, www.queenwords.com/lyrics/songs/sng11_01.shtml (last visited July 14, 2017)). The "rap" lyrics and "rap" videos in this case are entitled to the same protection under the First Amendment.

### 2.    *The Rap Lyrics Constitute Political and Social Discourse Entitled to Heightened Scrutiny*

The overall picture presented through the "rap" lyrics and "rap" videos at issue is that of an urban environment where violence is the norm. The songs are filled with political overtones. They transmit warnings, but also contain an invitation from the narrator to his audience to visit the hell on earth in which he

7

survives. These lyrics are social and political commentary on impoverished black neighborhoods in our inner cities. As such, they are entitled to even greater protections than that of other artistic expressions. "[S]peech on 'matters of public concern' ... is 'at the heart of the First Amendment's protection.'" *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011), *quoting Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985) (opinion of Powell, J.) (*quoting First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978)):

> The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). Accordingly, "speech on public issues occupies the highest rung of hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation marks omitted).

*Snyder v. Phelps*, *supra* at 451-52.

The Supreme Court has described two ways in which speech can be found to deal with matters of public concern: (1) when it can be "fairly considered as relating to any matter of political, social, or other concern to the community," and (2) when it is "a subject of legitimate news interest; that is a subject of general interest and of value and concern to the public." *Id.* at 453. These are contrasted with matters of purely "private concern," such as the information about an individual's personal credit report that was involved in *Dun & Bradstreet, supra*.

8

The "rap" lyrics and "rap" videos at issue easily fall within both of the categories of "public concern." The world of crime and violence that they so graphically describe is of obvious concern to the community at large and is subject of general interest to that community. The fact that the language used is offensive, outrageous, and inappropriate is not only "irrelevant to the question whether it deals with a matter of public concern," *Rankin v. McPherson*, 483 U.S. 378, 387 (1987), *quoted with approval* in *Snyder v. Phelps*, *supra* at 453, it is the very "reason for according it constitutional protection." *Hustler Magazine v. Falwell*, 485 U.S. 46, 55 (1988).

In determining whether speech is of private or public concern, this Court must make an independent examination of all the circumstance of the speech to analyze the "content, form, and context" of the speech. *Snyder v. Phelps*, *supra* at 444. As in *Snyder*, where the Supreme Court found vile speech directed at homosexuality at a military funeral as discussing issues of public import even though they contained words directed specifically and personally against the soldier being buried, the lyrics and videos at issue discuss issues of "public import": urban crime and violence, drug wars, and the utter lack of hope in our inner cities. However crude, the lyrics constitute statements of social commentary. "'Rappers' emphasis on posses and neighborhoods has brought ghetto back into the public consciousness." Rose, *supra* at 11. However visceral, they are

9

statements of political protest: a form of "black urban renewal" in the face of "meaningless jobs for young people, mounting police brutality, and increasingly oppressive depictions of young inner city residents. *Id.* at 61, with rap's "ghetto badman" "a protective shell against real unyielding and harsh social policies," *Id.* at 12, and "rap" music as "a contemporary stage for the theater of the powerless," rendering "a critique of various manifestations of power" with jokes and stories, enacting "ideological insubordination." *Id.* at 101. Professor Rose concludes:

> Rap music is fundamentally linked to larger social constructions of black culture as an internal threat to dominant American culture and social order. Rap's capacity as a form of testimony, as an articulation of a young black urban critical voice of social protest has profound potential as a basis for a language of liberation. Contestation over the meaning and significance of rap music and its ability to occupy public space and retain expressive freedom constitute a central aspect of contemporary black cultural politics.

*Id.* at 144.

Professor Michelle Alexander has a slightly different take on "rap," but nevertheless one that highlights its political nature. According to Professor Alexander, "rap" emerged as part of the struggle of young, black youths to preserve a positive identity by "embracing their stigma" in the face of the punitiveness and despair of the racialized "system of mass incarceration," where the war on drugs is waged "almost exclusively against poor people of color –

10

people already trapped in ghettos that lacked jobs and decent schools."[1] Alexander, *supra* at 175. In her view, "rap," and "gangsta rap" in particular, is a significant form of political expression:

> Indeed, the act of embracing one's stigma is never merely a psychological maneuver; it is a political act – an act of resistance and defiance in a society that seeks to demean a group based on an inalterable trait.

*Id.* at 171. It would be a cruel irony were the very type of social and political expression that may have been spawned by a reprehensible attack on one group of people used to further the vicious circle of conviction and despair.

The "rap" lyrics and "rap" videos at issue, with their anger, their profanity, their misogyny, and their harsh and relentless violence paint a picture of a city and of a people seemingly beyond help and without hope. Whether the lyrics represent a pronouncement of power, an embrace of stigma, or something else, they transmit messages of immense public concern. As in *Snyder*, despite that "these messages may fall short of refined social or political commentary," *Snyder v. Phelps*, *supra* at 454, they are entitled to and must receive heightened First Amendment protection.

---

[1] One third of African American male high school dropouts under 40 are currently in jail, and 20 percent of all African American men in that age group will go to prison. American Academy of Arts and Sciences, http://www.amacad.org/content/Research/researchproject.aspx?d=63 (last visited July 14, 2017).

**B.      UPON TAKING THE APPROPRIATE CONSTITUTIONAL ANALYSIS, THIS COURT SHOULD DENY THE ADMISSIBILITY OF THE RAP LYRICS AND RAP VIDEOS AS "ABSTRACT BELIEFS" NOT PROBATIVE OF ANY MATERIAL ISSUE**

Given the constitutionally protected status of the "rap" lyrics and "rap" music videos, an application of the evidentiary rules does not end this issue. The Supreme Court has recognized the necessity of a constitutional analysis of evidence offered in the face of a free speech claim, notwithstanding the applicability of evidentiary rules. *See Dawson v. Delaware*, 503 U.S. 159 (1992).

In *Dawson*, the Court ruled that the admission of the defendant's membership in a racist, white supremacist prison gang was not probative of any issue relevant to his sentencing, and therefore violated his First Amendment right to free association. The Court held that the First Amendment prohibited the use of evidence that proved nothing more than a defendant's possession of such "abstract beliefs." *Dawson v. Delaware*, *supra*, 503 U.S. at 167. In other words, if evidence of those beliefs does not make the truth of a material proposition any more or less probable, the admission of that evidence in unconstitutional. *Id.* at 168.

Here, the artistic, fictional nature of the "rap" lyrics and "rap" videos should serve as a red flag to this Court against admissibility. Merriam-Webster defines fiction as "something invented by the imagination or feigned; specifically: an invented        story."        Merriam-Webster,        https://www.merriam-

webster.com/dictionary/fiction (last visited July 17, 2017). Treating such "rap" lyrics as fact would be in conflict with the very definition of "fiction." At most, these are generalized "abstract beliefs." Second, the fact that the expressions are that of public, and not private, concern should further caution this Court against admissibility. Finally, as the issue centers on the specific genre of "rap" music – with all the baggage it carries of the intertwining of art, political protest, and the criminal justice system, this Court should not admit such lyrics as evidence without extreme caution. Such lyrics should not be lumped together with other non-artistic evidence. The admission of the "rap" lyrics or "rap" videos would violate the Defendant's First Amendment Rights.

## III. THE PREJUDICIAL EFFECT OF ADMITTING THE "RAP" LYRICS AND "RAP" VIDEOS INTO EVIDENCE WOULD SUBSTANTIALLY OUTWEIGH THE PROBATIVE VALUE OF SUCH EVIDENCE UNDER RULE 403

In addition to the First Amendment argument, the prejudicial effect of such an admission would substantially outweigh the probative value of the evidence under Rule 403. It is well settled that evidence otherwise admissible under the Federal Rules of Evidence remains subject to the unfair prejudice standard in Rule 403. *See McAlinney v. Marion Merrell Dow, Inc.*, 992 F.2d 839, 843 (8th Cir. 1993) ("Although Federal Rule of Evidence 801(d)(2) provides that [party-opponent] admissions are not hearsay, Rule 403 still permits the district court to exclude such evidence...."); *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir.

13

1992) (holding that where non-propensity evidence is permissible under Rule 404(b)(2), "admissibility depends upon whether its probative value outweighs its prejudicial effect."); *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015). Rule 403 permits a district court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of ... unfair prejudice." Fed. R. Evid. 403.

In a case similar to the one here, the Eastern District of Pennsylvania had to determine the admissibility of "rap music evidence" under Rule 403. *United States v. Bey*, No. CR 16-290, 2017 WL 1547006, at \*6 (E.D. Pa. Apr. 28, 2017). Ultimately, the court found that:

> Viewed in their broader artistic context, the rap music evidence does not have a high probative value. Rap lyrics are not necessarily autobiographical statements; rather, rap music is a well-recognized musical genre that often utilizes exaggeration, metaphor, and braggadocio for the purpose of artistic expression. Because rap lyrics may falsely or inaccurately depict real-life events, they should not necessarily be understood as autobiographical statements.

*Id.* The court stated that the Government's "[c]herry-picking the lyrics ... and entering them into evidence would take them out of context. Given the exaggerations and fabrications scattered throughout [the] lyrics, the statements ... have minimal probative value as to [the] guilt for this offense." *Id.* at \*7. *See Also United States v. Sneed*, No. 14-159, 2016 WL 4191683 at \*1-\*7, \*6 (M.D. Tenn. Aug. 9, 2016) ("The Government's argument has a fatal flaw; rapping about selling

14

drugs does not make it more likely that Defendant Sneed did, in fact, sell drugs.");
*State v. Skinner,* 218 N.J. 496, 500, 95 A.3d 236, 251 (2014) ("[W]e detect little to
no probative value to the [rap] lyrics whatsoever. The difficulty in identifying
probative value in fictional or other forms of artistic self-expressive endeavors is
that one cannot presume that, simply because an author has chosen to write about
certain topics, he or she has acted in accordance with those views. One would not
presume that Bob Marley, who wrote the well-known song 'I Shot the Sheriff,'
actually shot a sheriff, or that Edgar Allan Poe buried a man beneath his
floorboards, as depicted in his short story 'The Tell-Tale Heart,' simply because of
their respective artistic endeavors on those subjects."). The *Bey* court also found
that, "[a]s to the danger of unfair prejudice, the rap videos and lyrics are highly
inflammatory." *Bey, Supra* at *7. Ultimately, the court held that "even if the rap
music evidence were admissible under Rules 404(b)(2) and 801(d)(2)(A), which it
is not, its probative value is substantially outweighed by the danger of unfair
prejudice under Rule 403." *Id.* at *8.

In this case, like the lyrics in *Bey*, the "rap" lyrics at issue here "contain
language and imagery related to drugs, gun crime, violence…, and other
potentially offensive themes." *Id.* at *7. Like the lyrics in *Bey*, "[a]dmitting them
into evidence presents a serious risk of inflaming the jurors and influencing them
to convict [the defendant(s)] on impermissible grounds." *Id. See Also United States*

15

*v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996) (holding that the district court erred in admitting "heavily prejudicial" rap video because the lyrics "contained violence, profanity, sex, promiscuity, and misogyny and could reasonably be understood as promoting a violent and unlawful lifestyle."); *Skinner*, *supra* at 251 (holding that the defendant's "graphically violent rap lyrics could be fairly viewed as demonstrative of a propensity toward committing, or at the very least glorifying, violence and death.... [and that the] prejudicial effect overwhelms any probative value that these lyrics may have."). Thus, even if this Court were to find that the "rap" lyrics and "rap" videos were admissible under the rules of evidence, they should be excluded as the probative value is substantially outweighed by the danger of unfair prejudice under Rule 403 and violates the Defendants' First Amendment right to free expression and free association.

## IV.    RELIEF REQUESTED

For all the reasons stated above, Quincy Graham respectfully requests that this Honorable Court preclude the Government's use of "rap" lyrics and "rap" videos at trial.

Respectfully submitted,

 /s/ Michael A. Rataj
MICHAEL A. RATAJ (P43004)
Attorney for D-5 Quincy Graham
500 Griswold, Suite 2450
Detroit, MI 48226

Dated: July 31, 2017                   313-963-4529

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN)
           )SS
COUNTY OF WANYNE)

       I, Michael A. Rataj, state that on July 31, 2017, I electronically filed a *Motion to Preclude the Government's Use of Rap Lyrics and Rap Videos at Trial, Brief in Support of Motion,* and *Certificate of Service* with the Clerk of the Court using the ECF system which will send notification of such to Assistant United States Attorney Christopher Graveline.

                           */s/ Michael A. Rataj*
                           MICHAEL A. RATAJ (P43004)