UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,       CRIM. NO. 15-20652

               Plaintiff,       HON. George Caram Steeh

   v.

D-5 QUINCY GRAHAM,

               Defendant.

_____/

## GOVERNMENT'S RESPONSE TO MOTION TO PRECLUDE THE GOVERNMENT'S USE OF RAP LYRICS AND RAP VIDEOS AT TRIAL

NOW COMES the United States of America, by and through undersigned counsel, to respectfully request that the Court deny Defendant Graham's Motion to Preclude the Government's Use of Rap Lyrics and Rap Videos at Trial and Brief in Support thereof (Docket Entry (DE) 580), which was joined by Defendant Patterson (DE 604), Defendant Adams (DE 609), and Defendant Rogers (DE 619) (collectively hereinafter, the "Defendants" and the "Motion") for the reasons stated below:

## I.    INTRODUCTION

Defendants ask the Court to preclude the government's use of twenty-four rap songs, lyrics, and videos at trial pursuant to the Defendants' First Amendment Right to Free Speech and Free Association. As further detailed below, the contested evidence is relevant, admissible, and possesses probative value that is not substantially

1

outweighed by the danger of unfair prejudice.

### a.  Procedural History

On December 15, 2016, a grand jury in the Eastern District of Michigan indicted the Defendants, on a Fourth Superseding Indictment, DE 440 (hereinafter the "Indictment"), alleging various crimes in connection with their association with the Seven Mile Bloods enterprise ("SMB enterprise").

Count One alleges that the Defendants, and known and unknown co-conspirators, conspired to conduct and participate in the affairs of the SMB enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).  Count One further alleges that the pattern of racketeering activity consisted of multiple acts indictable under federal law including murder, attempted murder, assault, robbery, drug distribution, witness intimidation, and the use of firearms in furtherance of criminal activity.  The Defendants and co-conspirators documented through rap videos, songs, and lyrics several of these crimes as well as other real-life conduct that was used to promote and further the goals of the SMB enterprise.

On July 31, 2017, Defendant Graham filed a Motion to Preclude the SMB Rap Tracks, and Brief in Support thereof with Defendant Patterson, Defendant Adams, and Defendant Rogers joining.  *See* DE 580, 604, 609.  The Defendants allege that "[h]owever distasteful, these [SMB Rap Tracks] are artistic expressions entitled to

Constitutional protection.   Further they are expressions of political and social commentary, sitting on the highest rung of First Amendment hierarchy." *See* DE 580, Brief, at p. 1.  Defendants' Motion addresses twenty-four specific rap songs, lyrics, and videos; however, of those twenty-four, the government anticipates only offering the following eleven rap songs, lyrics, and videos (hereinafter the "SMB Rap Tracks") into evidence in the trial of the Defendants, that is scheduled to begin October 10, 2017.[1] The eleven SMB Rap Tracks the government intends to play into evidence include the following:

(1) Cocaine Sonny Ft. Berenzo & Block – "Murda";

(2) Cocaine Sonny ft. HardWork Jig & Berenzo – "I Hust";

(3) HardWork Jig – "Welcome to HOB City Intro";

(4) HardWork Jig – "I'm Working";

(5) HardWork Jig ft. Cocaine Sonny – "OG";

(6) Ro Da Great ft. ADA Skippo – "Bleek";

(7) Ro Da Great ft. Good Jet, Product – "Not Runnin From Shit";

(8) Ro Da Great – "Intro";

(9) Ro Da Great ft. Berenzo, Lee Ferg – "Welcome to the Streets";

(10) 4shoMagcom Presents – "55 Dubb"; and

(11) THESTING – "55 Dubb Greatest Show on Earth 5."

---

[1] The government reserves its right to enter into evidence any other rap videos, lyrics, or songs that the Defendants have not identified in their Motion.  The government estimates that would include an additional 5-6 rap videos/songs.

The government will not be seeking to admit into evidence the remaining thirteen rap tracks objected to by the Defendants, and, therefore the Court does not need to address them.

b.         **Factual Background**

As alleged in the Indictment, the Defendants, along with numerous other individuals, are members of the SMB enterprise. The Detroit-based SMB enterprise is located in and around Gratiot Avenue to the west, Kelly Road to the east, Eight Mile to the north, and Seven Mile Road to the south, and lies in U.S. Postal zip code 48205, an area the SMB enterprise refers to as the "RedZone," or as the zip code "4820Die." *See* Indictment, DE 440, at p. 3 ¶ 1. The SMB enterprise conducts many of its illegal activities, including narcotics trafficking, in or around the streets of Lappin, Coram, Novara, Liberal, Manning and Tacoma, within the "RedZone." *See id.* The SMB enterprise consists of older members sometimes referred to as "55," and junior members sometimes referred to as "Hobsquad" in honor of SMB enterprise member Ihab Maslamani who was convicted of murder in 2010. *See id.*, pp. 3-4 ¶¶ 2-3. The SMB enterprise utilizes many identifiers, including gang signs and symbols, red clothing, tattoos, and social media postings glorifying the SMB enterprise. *See id.* The members are heavily involved in the YouTube Rap Video scene. *See id.*, pp. 4-5 ¶ 4. These videos detail and boast about the enterprise's criminal activities.

The Indictment also alleges that the SMB enterprise's main income source is narcotics trafficking, including distributing cocaine, heroin, marijuana, codeine promethazine, and various prescription pills. *See id.*, p. 5 ¶ 5. The members sell narcotics in the "RedZone" out of vacant houses known as "trap houses." *See id.* Higher-ranking members of the SMB enterprise often sell on the same block and share "workers." *See id.* SMB Enterprise members also travel out-of-state to sell narcotics. *See id.*

The SMB enterprise's purpose is to (1) maximize profits from illegal activity, (2) preserve and protect its power, territory, and profits through intimidation and violence, (3) promote and enhance the SMB enterprise and its members, and (4) keep victims in fear of the SMB enterprise through violence and threats of violence. *See id.*, at p. 7 ¶ 8. At the time of the Indictment, the SMB enterprise was engaged in an active gang war with other Detroit gangs. *See id.*, pp. 5-6 ¶ 6. Beginning in 2014 through approximately September 2015, the SMB enterprise and its rivals violently attacked one another on a routine basis and posted "hit lists" on social media. *See id.*, p. 5 ¶ 6.

## II.   ARGUMENT

### a.  Rap Lyrics are not entitled to heightened protection under the First Amendment.

The Defendants contend that the SMB Rap Tracks are expressive conduct and artistic expression which constitute political and social discourse, and thus that the

admission of the tracks would violate their right to freedom of expression.  They further argue that because the SMB Rap Tracks constitute protected speech the Court must evaluate their admission at trial using a heightened constitutional analysis, rather than a standard evidentiary analysis.  This analysis is incorrect.

The First Amendment guarantees that "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. CONST. amend. I.  First Amendment protection extends to music "as a form of expression and communication."  *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989).  The Supreme Court has made clear; however, that "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."  *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993).  The First Amendment simply bars the admission of evidence relating to a defendant's "abstract beliefs . . . when those beliefs have no bearing on the issue being tried."  *Dawson v. Delaware*, 503 U.S. 159, 165, 168 (1992).  "The crucial question is whether the evidence at issue [is] used for permissible purposes or merely to show that [the defendant] was morally reprehensible due to his abstract beliefs."  *United States v. Fell*, 531 F.3d 197, 229 (2d Cir. 2008) (internal quotations omitted) (quoting *United States v. Kane*, 452 F.3d 140 (2d Cir. 2006)); *see also Dawson*, 503 U.S. at 165 ("[T]he Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations…simply because those beliefs and associations are protected by the First Amendment.").

As part of its proofs at trial, the government will have to prove that the SMB enterprise, as charged in the Indictment, exists, that the Defendants are members or associates of that charged enterprise, and that the Defendants committed certain acts related to and in furtherance of the SMB enterprise.  Among the pieces of evidence the government intends to introduce at trial are the SMB Rap Tracks.[2]

There are several reasons these SMB Rap Tracks are important to proving the government's case.  First, they make a fact of consequence, the existence of the SMB enterprise and the enterprise's racketeering activity, more probable than it would be without the evidence.  *See* Federal Rule of Evidence (Fed. R. Evid.) 401.  In these SMB Rap Tracks, SMB members, including many of the Defendants who are on trial in Trial Group #1, rap about the Seven Mile Bloods, SMB, 55, Hobsquad, and the "RedZone."  Second, the tracks clearly demonstrate the relationship between the Defendants, the SMB enterprise, and other SMB enterprise associates.  Third, the SMB Rap Tracks provide a visual representation of the indicia of the SMB Enterprise including clothing, symbols, tattoos, hand signals, and territory.  Finally, the tracks discuss and promote

---

[2] As part of its response, the government will be deliver a compact disc containing all eleven of the SMB Rap Tracks it intends to offer into evidence for the Court's review.  In addition, the government has also attached summaries of the SMB Rap Tracks as Exhibit 1.  These summaries are simply to give the Court a general idea as to their relevance.  The summaries do not contain all of the reasons the particular tracks are relevant.  If after viewing a particular Rap Track, the Court would like additional explanation of the content or relevance of that track, the government would ask an evidentiary hearing where a witness can more fully explain the content and relevance.

the goals and purpose of the SMB enterprise, which is to maximize profits through narcotics trafficking and violence, and the means the SMB enterprise uses to accomplish its goals, including violence and threat of violence against witnesses and rival gang members.

In a recent similar RICO gang case in this district in which a defendant had been indicted for participating in a RICO conspiracy as a member of the Bounty Hunter Bloods, the district court denied a First Amendment argument to exclude rap lyrics as meritless. *United States v. Garnes*, No. 14-20119, 2015 WL 3574845, at *2, n.1 (E.D. Mich. June 5, 2015) (J. Edmunds). In that case, the court rejected the First Amendment argument and the applicability of *Dawson v. Delaware*, 503 U.S. 159 (1992), the same case on which the Defendants in this case also rely. *Id.* at *2, n. 1. The court explained that "[u]nlike in *Dawson*, Defendant's lyrics will be relevant to the issues being decided in the proceeding (i.e., his membership in the Bounty Hunters gang.) If they are not relevant, then they will be excluded regardless under the Federal Rules of Evidence." *Id.* (internal quotations omitted). The court also cited to and quoted the Second Circuit in *U.S. v. Pierce*, No. 13-3687, 2015 WL 2166141, at * 6 (2d Cir. May 11, 2015), as persuasive authority, which also addressed whether admission of rap lyrics in a gang trial violated the First Amendment: "[t]his challenge is meritless, however, because here the speech is not itself the proscribed conduct. The speech was not the basis for the prosecution,

8

but instead it was used to establish the existence of, and Colon's participation in, the alleged RICO enterprise." *Id.*

Simply put, the First Amendment does not erect a constitutional bar to the admission of the SMB Rap Tracks in this case. The government is not offering these rap tracks to depict the Defendants as "morally reprehensible" because of their "abstract beliefs" as expressed through the content of their videos. *See Fell*, 531 F.3d at 229. Rather, the SMB Rap Tracks directly relate to the Defendants' charged conduct. *See Dawson*, 503 U.S. at 168. The government seeks to offer the SMB Rap Tracks as direct, highly probative evidence of the existence of the racketeering enterprise, the Defendants' history with that enterprise, its members, and associates, the relationship of trust between its members, the unlawful possession and use of firearms, the use and threatened use of violence against its enemies and "snitches," and the fact that the Defendants committed specific crimes to further the goals of the enterprise. Consequently, the First Amendment does not present a bar to the introduction of the SMB Rap Tracks in this case. *See United States v. Salameh*, 152 F.3d 88, 111-12 (2d Cir. 1998) (rejecting arguments that the First Amendment bars admission of evidence of a defendant's political speech when the materials were used to prove motive and intent and "provided circumstantial proof of a connection among the conspirators"); *id.* ("Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is

admissible against the defendant"); *United States v. Herron*, No. 10-615, 2014 WL 1871909, at *2-3 (E.D.N.Y. May 8, 2014) (rejecting defendant's argument on First Amendment grounds for preclusion of rap-related videos in a racketeering case in which the enterprise involved murders, drug distribution conspiracy, and firearms offenses).

Contrary to the Defendants' assertions, the SMB Rap Tracks are not abstract; but rather discuss actual events, many of which are alleged in the Indictment. For example, in the SMB Rap Track: HardWork Jig ft. Cocaine Sonny – "OG" which was posted on YouTube on December 15, 2015, co-defendant Bailey, a/k/a "Cocaine Sonny," raps about beating a murder charge. On December 1, 2010, a jury found Bailey not guilty of a 2009 murder of Ronald Calloway. *See also* Indictment, DE 440, at 22, Overt Act 75. In that same video, co-defendant Hendrix raps about how he and Defendant Arnold were some of the first SMB enterprise members to do prison time. Both of them were in fact incarcerated early on in the enterprise's history. On January 9, 2006, a jury convicted Hendrix of assault with a dangerous weapon and he was subsequently sentenced to 32-48 months. On July 27, 2007, Defendant Arnold was sentenced to 47-180 months for his convictions of felon in possession of a firearm, assault with intent to commit great bodily harm, carrying a concealed weapon, and felony firearm offense.

Likewise in the SMB Rap Track: HardWork Jig – "Welcome to HOB City Intro," posted to YouTube on March 8, 2013, co-defendant Hendrix sings about he is from the "RedZone" where "we are quick to shoot," drug dealing out of "trap" houses or "spots," how everyone in the neighborhood is "claiming red" (the color of the Bloods), how people are "flipping pills," as another person sings "scripts" in the background, before indicating that "Rome" (defendant Gooch, who is standing right behind Hendrix in the video) taught Hendrix how to make money selling this way, how a SMB enterprise member "caught a body" and then showed actual news coverage of the trial and guilty verdict of Ihab Masalami, who was convicted in 2010 of murder, which is explained in paragraph 2 of the Indictment, and how the gang changed up its "game plan" for making money over time.   Moreover, the video starts by identifying the "neighborhood" that is being rapped about since it shows footage of the street signs of Coram and Crusade streets (which are two streets within the "RedZone"), shows numerous firearms being possessed as is charged in Count 32 of the Indictment, and shows several individuals who are on the Indictment including co-defendants Jerome Gooch and Derrick Kennedy and now-deceased SMB member Devon McClure.  In at least eight of the SMB Rap Tracks, various members of the SMB enterprise rap about selling drugs, accumulating wealth, and using weapons to protect themselves.  On approximately forty separate occasions outlined in the Overt Act section of the Count

One of the Indictment, the Defendants and co-conspirators were arrested or found with various drugs, currency, and weapons.

In SMB Rap Track: Betrayal: Stop Bleekin – Bleek, RO Da Great, posted on YouTube on July 28, 2014, co-defendant Robert Brown raps about "bleekin," which the enterprise members use as a slang term for talking to the police or "snitching."  In this track, Brown tries to intimidate witnesses from testifying saying he will kill them, which is both "manner and means" and charged racketeering activity of the SMB enterprise.  *See* DE 440, Indictment at 8-9, ¶9a-c and ¶10d.  This rap is a reference to a specific SMB member nicknamed "Bleek," who the SMB enterprise members suspect of being a cooperator.  These lyrics are directly probative of the allegations of witness intimidation.  Additionally, when these lyrics are compared with lyrics from the track HardWork Jig – "Welcome to HOB City Intro," discussed above, one hears Hendrix also sings about how "Bleek turned snitch, he had to break the rules."  This comparison can help a jury determine whether the enterprise exists, i.e. different people identifying the same person and stating that he somehow "broke the rules."  What rules are there to break unless you have some identifiable group who all agree to act in a certain way?

The Defendants seek to paint in broad strokes the SMB Rap Tracks as political speech.  They argue that the SMB Rap Tracks are subject to even greater protections and their introduction into evidence would violate the Defendants' rights of free expression under the First Amendment.   This argument finds no support in the law as

applied to the particular facts of this case. The Defendants built a drug-dealing enterprise through ruthless violence and intimidation, terrorizing at least two communities in the process, and then wrote about it, highlighting real-life criminal conduct to burnish their credentials as real-life gangsters or "OG." *See* HardWork Jig ft. Cocaine Sonny – "OG." That the Defendants put their admissions to music, made them rhyme, or presented them in documentary-style videos does not inoculate them against their use at trial.

The cases cited by the Defendants provide no support for their position. *Snyder v. Phelps*, 562 U.S. 443 (2011), supports the basic proposition that speech on public issues lies at the heart of the First Amendment's protection, but the case provides no guidance on the evidentiary issue before this Court. *Phelps* addressed a civil lawsuit seeking to hold the members of the Westboro Baptist Church liable for the content of—and harm allegedly caused by—speech concerning "the fate of our nation, homosexuality in the military, and scandals involving the Catholic clergy…." *Id.* at 444. Here, the government is not seeking to punish or otherwise hold the Defendants liable for the content of the speech; rather, the speech is being introduced as evidence of independent criminal conduct.

As explained above, the Defendants also rely on *Dawson v. Delaware*, 503 U.S. 159 (1992), but that case *supports* the admission of the SMB Rap Tracks. *Dawson* found constitutional error in the admission of evidence at sentencing concerning the

13

defendant's membership in a Delaware branch of the Aryan Brotherhood on the grounds that, the government failed to demonstrate that the Delaware branch held any racist beliefs, and that, in any event, there was no evidence that the crime was animated by racial animus. *Id.* at 160, 166. The Supreme Court observed that, "on the present record one is left with the feeling that the Aryan Brotherhood evidence was employed simply because the jury would find these beliefs morally reprehensible." *Id.* at 167. In so holding, however, the Supreme Court rejected the notion that the Constitution forbids consideration at sentencing of "any evidence concerning beliefs or activities that are protected under the First Amendment." *Id.* at 164. *Dawson* therefore confirms that the First Amendment does not preclude the use of public speech, or the fact of a defendant's association with a criminal enterprise, as evidence in a criminal proceeding. The question then becomes whether the SMB Rap Tracks are admissible under the Federal Rules of Evidence.

> **b. The SMB Rap Tracks are admissible under the Federal Rules of Evidence.**

>> **i. The SMB Rap Tracks are Statements Admissible under Fed. R. Evid. 801(c) or Rule 801(d)(2)**

The statements contained within the SMB Rap Tracks, depending on their content and the speaker, are admissible as either: (1) verbal acts; (2) admissions of a party opponent; (3) adopted statements; or (4) co-conspirator statements.

First, certain statement on the SMB Rap Tracks are admissible non-hearsay because their relevance turns simply on the fact that it was made, not on its truth or falsity.  An out-of-court statement or assertion is hearsay only if "offered in evidence to prove the truth of the matter asserted."  Any statement offered for a purpose other than to prove the truth of the matter asserted is not hearsay.  *See* Fed.R.Evid. 801(c).  It is only once a statement is considered hearsay that the court is required to consider the applicability of hearsay exclusions (Fed.R.Evid. 801(d)) or exceptions (Fed.R.Evid. 803, 804, 807).  It then follows that any statement offered for a purpose other than to prove the truth of the matter asserted is not hearsay.  *See United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008) (in prosecution for conspiracy to commit murder for hire, the solicitation seeking an accomplice to murder was not hearsay, but rather a verbal act).  Oftentimes, "it is the fact that the declaration was made, and not the truth of the declaration, which is relevant."  *Id.* at 559; *see also United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) ("[a] statement offered as evidence of the bare fact that it was said, rather than for its truth, is not hearsay").  As the Sixth Circuit explained in *Rodriguez-Lopez*:

> [W]hatever their grammatical mode, the statements are not hearsay because the government does not offer them for their truth. Indeed, if the statements were questions or commands, they could not – absent some indication that the statement were actually code for something else – be offered for their truth because they would not be assertive speech at all. They would not assert a proposition that could be true or false. . . . Even

15

if the statements were assertions, the government offers them, not for their truth, but as evidence of the fact that they were made.

To be sure, the government seeks to introduce the calls because they support an inference that [the defendant] was involved in dealing heroin. This inference, however, does not depend on the callers' truthfulness, memory, or perception—the core credibility concerns that lie behind the hearsay rule. . . . And the fact that out-of-court statements are being used to support a material inference does not itself make them hearsay; it makes them relevant.

*Id.* 314-15 (citations omitted); *see also United States v. Brewer*, 332 Fed.Appx. 296, 302 (6th Cir. 2009).

Other lyrics the government will be offering for the truth of the matter asserted. The SMB Rap Tracks were made by SMB Enterprise members and have appearances by at least eleven of the co-defendants, including all six co-defendants who will be tried together in October.  Defendant Arnold raps the lyrics himself in many of the SMB Rap Tracks, and others participate in the SMB Rap Tracks by wearing gang colors, making gang signs, throwing money, and singing along to the lyrics in the videos, showing their adoption and belief in the statements.  Therefore, the SMB Rap Tracks are admissible under Fed. R. Evid. 801(d)(2)(A) (admission of party opponent) and (B) (adopted statements).

To the extent the government is offering certain lyrics for the truth of the matter asserted, the SMB Rap Tracks are also admissible as co-conspirator statements made in the course of, and in furtherance of, the RICO conspiracy.  The SMB Rap Tracks were made by co-conspirators and were uploaded to YouTube from 2013-2016, which is

during the timeframe of the conspiracy alleged in the Indictment.  *See United States v. Norwood*, No. 12-20287, 2015 WL 2250481, at *5-8 (E.D. Mich. May 13, 2015) (J. Goldsmith) ("Norwood I") (finding rap videos were made in the course of RICO conspiracy where evidence showed defendant viewed himself as active member of the group while the videos were made).  The SMB Rap Tracks also were made in furtherance of the conspiracy.

The SMB enterprise's purposes are to maximize profits from illegal activity, preserve and protect the power, territory and profits of the SMB enterprise through intimidation and violence, promote and enhance the SMB enterprise and its members, and keep victims in fear of the enterprise through violence and threats of violence.  *See* DE 440, Indictment at p. 7 ¶ 8.  The SMB Rap Tracks portray these purposes and the means the enterprise uses to accomplish it, including committing murder, robbery, assaults with firearms, witness intimidation, and drug trafficking.  *See id.*, at p. 7 ¶ 9. Therefore, the SMB Rap Tracks also are admissible under Rule 801(d)(2)(E).  *See Norwood I*, 2015 WL 2250481, at * 10-11 (finding rap videos posted online which threatened snitches were admissible where the government showed that, as alleged in its indictment, the purpose of the conspiracy was to protect the enterprise from detection, apprehension, and prosecution);  *U.S. v. Norwood*, No. 12-20287, 2015 WL 2343970, at * 11 (E.D. Mich. May 14, 2015) (J. Goldsmith) ("Norwood II") (finding that rap lyrics that "helped establish the existence of the enterprise, its members, and at

17

least one of its alleged purposes and/or means and methods" were admissible as co-conspirator statements made in furtherance of a conspiracy pursuant to Rule 801(d)(2)(E)) (citing *United States v. Wilson*, 493 F.Supp.2d 460, 462-63 (E.D.N.Y. 2006)).

### c.  The SMB Rap Tracks are admissible under Rule 403.

The Defendants argue that the SMB Rap Tracks should nevertheless be excluded under Fed. R. Evid. 403 because the danger of unfair prejudice substantially outweighs the probative value of the evidence.  Contrary to the Defendants' assertions, the SMB Rap Tracks are highly probative evidence of the charged conduct.

Relevant evidence may be excluded, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *See* Fed. R. Evid. 403.    "Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis."  *United State v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)).

The Sixth Circuit has found that "[a]lthough prejudicial to a defendant, evidence of gang affiliation can be sufficiently probative to survive a Rule 403 challenged."  *United States v. Williams*, 158 Fed. Appx. 651, 653-54 (6th Cir. 2005) (finding no abuse of discretion where district court introduced evidence of gang affiliation to show participation in a drug conspiracy).  "This Court has held that evidence of gang affiliation is admissible to establish the defendant's opportunity to commit a crime,

[*United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996)], or where the interrelationship between people is a central issue in the case, *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999), *United States v. Tolbert*, 8 Fed. Appx. 372, 378–79 (6th Cir. 2001), but is inadmissible if there is no connection between the gang evidence and the charged offense, *United States v. Hendrix*, No. 94–1404, 1995 WL 218472, at *3 (6th Cir. Apr. 12, 1995)." *United States v. Anderson*, 333 Fed.Appx. 17, 24 (6th Cir. 2009) (internal quotations omitted); *cf. United States v. Newsom*, 452 F.3d 593, 604 (6th Cir. 2006) (holding the danger of unfair prejudice substantially outweighed the probative value of gang tattoo evidence where the charge was felon in possession of a firearm).

The Sixth Circuit has held rap lyrics about killing witnesses admissible over Federal Rule of Evidence 401, 402, 403, and 404(b) objections. *See United States v. Stuckey*, 253 Fed. Appx. 468, 482–84 (6th Cir. 2007). In *Stuckey*, the lyrics described specific facts matching the charged crime. *Id.* at 482–83. "Stuckey's lyrics concerned killing government witnesses and specifically referred to shooting snitches, wrapping them in blankets, and dumping their bodies in the street—precisely what the government accused Stuckey of doing to Darbins in this case." *Id.* at 482. While Stuckey argued that "the lyrics were fictional, and that their admission unfairly prejudiced him because of their use of 'extreme words and imagery' and 'graphic' language," the Court explained that the evidence was admitted as "autobiographical

20

statements of acts relevant to the case" to prove that he killed the victim and not to show his propensity toward violence.  *Id.* at 483.

Likewise, as addressed above, the district court in *Norwood II* held that rap videos posted online were admissible in a RICO case because they "helped establish the existence of the enterprise, its members and at least one of its alleged purposes and/or means and methods: evading law enforcement by using threats and violence to dissuade witnesses from 'snitching.'"  *Id.*, at *11 (citing *Wilson*, 493 F.Supp.2d at 462–63 ( permitting rap lyrics to be used to show the existence of a racketeering enterprise as co-conspirator statements made during the course of, and in furtherance of, a conspiracy under Rule 801(d)(2)(E)).

The SMB Rap Tracks are highly probative, on-topic, and important evidence tending to establish that the Defendants and co-conspirators belonged to the charged enterprise and engaged in conduct to further its purpose and goals.  The SMB Rap Tracks directly address the Defendants' involvement, knowledge, and intent by appearing together and discussing distributing narcotics, threatening witnesses, killing rival gang members, protecting the RedZone, and earning respect as members of and in furtherance of the SMB Enterprise.  *See Herron*, 2014 WL 1871909, at *4 (finding the content of the rap-related videos to be relevant in a similar case where the government must prove the existence and structure of an alleged criminal enterprise and a pattern of criminal activity committed in furtherance of that enterprise).

21

The cases on which the Defendants rely are non-persuasive in this case, primarily because they concern situations where a defendant is charged with a discreet crime (i.e. felon in possession of a firearm or attempted murder) and the government introduces evidence that is not relevant to the charged crime. For example, in *U.S. v. Bey*, No. 16-290, 2017 WL 1547006, at *4 (E.D. Pa. Apr. 28, 2017), the court found the rap music evidence inadmissible under Rule 404(b) because knowledge, absence of mistake, and intent were not at issue in that felon in possession of a firearm case. In addition, the court found the probative value of the contested evidence was undercut because the evidence was undated, so it was not known if the rap music was created at or near the time of the defendant's arrest, and the government did not demonstrate that the rap music was autobiographical. *Id.* at *6-7. "The government has not demonstrated, for example, that Bey actually carries pistols while in Porsches, has been shot in his chest and experienced burning "like vodka," has shot Jewish people, or kills "at will." *Id.* The Court went on to explain that "many of the lyrics contain potentially inflammatory material that is entirely irrelevant to this case, such as references to the Black Mafia, Louis Farrakhan, John Dillinger, and statements about 'bruis[ing] on' Jewish people and 'blast[ing] you in your yarmulke.' These statements risk inflaming the jurors and have no bearing whatsoever as to whether Bey possessed a firearm on March 28, 2016." *Id.* at *7.

Similarly, the other case the Defendants cite to *State v. Skinner*, 218 N.J. 496, 500, 95 A.3d 236, 238–39 (2014), was a prosecution for attempted murder.    In that case, the New Jersey State Supreme Court affirmed the lower court holding that,

> "the violent, profane, and disturbing rap lyrics authored by defendant constituted highly prejudicial evidence against him that bore little or no probative value as to any motive or intent behind the attempted murder offense with which he was charged…. Fictional forms of inflammatory self-expression, such as poems, musical compositions, and other like writings about bad acts, wrongful acts, or crimes, are not properly evidential **unless** the writing reveals a strong nexus between the specific details of the artistic composition and the circumstances of the underlying offense for which a person is charged, and the probative value of that evidence outweighs its apparent prejudicial impact." *Skinner*, 95 A.3d at 238-39 (emphasis added).

However, that case is easily distinguishable, and in fact, has already been distinguished by another district court in this district when the charge is RICO conspiracy.   *Norwood II*, 2015 WL 2343970, at * 10-11 ("In that non-binding, state-court case, the New Jersey Supreme Court interpreted New Jersey Rule of Evidence 404(b) with respect to the admission of rap lyrics at trial….. The *Skinner* court specifically noted that 'rap lyric evidence that provides direct proof against a defendant—such as an admission or details that are not generally known and dovetail with the facts of the case—should be analyzed for relevance under [Rule] 401 and evaluated under [Rule 403]'s standard for prejudice, and not the standard for prejudice under a [Rule 404(b)] analysis.'…. That is the case here, and thus Skinner is distinguishable").

In sum, the SMB Rap Tracks have a strong nexus to the underlying offenses the government has to prove, and is particularly relevant to proving the existence of the SMB Enterprise and the Defendants' association with it.  As addressed above, many of the statements within the SMB Rap Tracks directly relate to real-life events and include real media coverage about the SMB Enterprise.  "While it is true that the videos contain profanity, misogyny, and references to violence that viewers could find objectionable or shocking, it cannot be said that their content is 'more inflammatory' than the charged crimes—[ ] violent murders, narcotics trafficking, weapons possession, and other criminal activity by the alleged enterprise."  *Herron*, 2014 WL 1871909, at \*5 (quoting *United States v. Livoti*, 196 F. 3d 322, 326 (2d Cir. 1999)).  The government has been judicious in paring down and selecting the most relevant tracks to present to the jury.[3]  The SMB Rap Tracks are admissible, relevant evidence as they have significant probative value that goes directly to the elements at issue in the Indictment, and any prejudice does not substantially outweigh the probative value under Federal Rule of Evidence 403.

---

[3] Collectively, these all the Rap Tracks the government will seek to introduce are less than an hour in length, and so will take up very little actual time in the course of a trial that is expected to last 6-8 weeks.

III.   **<u>CONCLUSION</u>**

The Government respectfully requests that the Court deny the Motion to Preclude the Government's Use of Rap Lyrics and Rap Videos at Trial.

Respectfully submitted,

DANIEL L. LEMISCH
ACTING UNITED STATES ATTORNEY

Dated: August 15, 2017

 /s/ Julie A. Finocchiaro
JULIE A. FINOCCHIARO
Trial Attorney
U.S. Department of Justice
1301 New York Avenue, N.W.,
Washington, D.C. 20530
Telephone: (202) 514-0842
Julie.Finocchiaro@usdoj.gov

CHRISTOPHER GRAVELINE (P69515)
Assistant United States Attorney
211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
christopher.graveline2@usdoj.gov

JUSTIN WECHSLER
Trial Attorney
U.S. Department of Justice
450 5th Street, NW
Washington, D.C. 20530
Justin.Wechsler@atr.usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 15, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

/s/ Julie A. Finocchiaro
Julie A. Finocchiaro
Trial Attorney
