UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No. 15-20652-05

vs.

                              HON. GEORGE CARAM STEEH

D-5 QUINCY GRAHAM,

        Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO PRECLUDE THE GOVERNMENT'S USE
OF RAP LYRICS AND RAP VIDEOS AT TRIAL [DOC. 580]

This matter is before the court on defendant Quincy Graham's motion to preclude the government's use of rap lyrics and rap videos at trial. The motion is joined in by co-defendants Rogers, Brown, Patterson, Arnold, Adams and Gooch. Oral argument was held on September 11, 2017.

The government intends to play into evidence 11 SMB Rap Tracks, identified as:

(1) Cocaine Sonny Ft. Berenzo & Block – "Murda";

(2) Cocaine Sonny ft. HardWork Jig & Berenzo – "I Hust";

(3) HardWork Jig – "Welcome to HOB City Intro";

(4) HardWork Jig – "I'm Working";

(5) HardWork Jig ft. Cocaine Sonny – "OG";

(6) Ro Da Great ft. ADA Skippo – "Bleek";

(7) Ro Da Great ft. Good Jet, Product – "Not Runnin From Shit";

(8) Ro Da Great – "Intro";

(9) Ro Da Great ft. Berenzo, Lee Ferg – "Welcome to the Streets";

(10) 4shoMagcom Presents – "55 Dubb"; and

(11) THESTING – "55 Dubb Greatest Show on Earth 5."

The government has given the court a compact disc containing the eleven Rap Tracks it intends to offer into evidence. In addition, the government attached a summary of each Rap Track, providing a general idea of its relevance.

The Indictment states that defendants are members of the SMB, and contains the following allegations: The SMB is located in Detroit, bordered by Seven Mile Road on the south, Eight Mile Road on the north, Gratiot Avenue on the west, and Kelly Road on the east. This area is in the U.S. Postal zip code 48205, which the SMB enterprise refers to as the "RedZone" or as the zip code "4820Die." The SMB enterprise conducts much of its narcotics trafficking in the RedZone. The SMB enterprise consists of older members referred to as "55", and junior members referred to as "Hobsquad" in honor of SMB member Ihab Maslamani who was

convicted of murder in 2010. The SMB utilizes many identifiers, including gang signs and symbols, red clothing, tattoos, and social media postings glorifying the SMB enterprise. The members are heavily involved in the YouTube Rap Video scene. Their videos allegedly detail and boast about the enterprise's criminal activities.

The Indictment also alleges that the SMB's main source of income is narcotics trafficking, including distributing cocaine, heroin, marijuana, codeine promethazine, and prescription pills. Members sell narcotics in the RedZone out of vacant houses known as "trap houses." Higher-ranking members often sell on the same block and share "workers." Members also travel out-of-state to sell narcotics.

According to the Indictment, the SMB enterprise's purpose is to (1) maximize profits from illegal activity, (2) promote and protect its power, territory and profits through intimidation and violence, (3) promote and enhance the SMB enterprise and its members, and (4) keep victims in fear of the SMB through violence and threats of violence. From 2014 through September 2015, the SMB and its rival gangs in Detroit were involved in an active gang war, violently attacking one another and posting "hit lists" on social media.

The government argues that the SMB Rap Tracks are important to proving its case.  First, they make a fact of consequence, the existence of the SMB enterprise and the enterprise's racketeering activity, more probable than it would be without the evidence.  Many of the defendants in Trial Group #1 rap about the SMB, 55, Hobsquad, and the RedZone.  Second, the tracks demonstrate the relationship between the defendants, the SMB enterprise, and other SMB enterprise associates.  Third, the SMB Rap Track videos provide a visual representation of the indicia of the SMB enterprise, including clothing, symbols, tattoos, hand signals and territory.  Finally, the tracks discuss and promote the goals and purpose of the SMB enterprise, which is to maximize profits through narcotics trafficking and violence, and the means they use to accomplish its goals, including violence and the threat of violence against witnesses and rival gang members.

Defendants characterize rap, and the Rap Tracks at issue, as a form of artistic expression subject to heightened protection under the First Amendment.  The lyrics depict a world where violence is intense, but the lyrics are filled with rhyme which is creative and vivid, filled with metaphors and similes.  Defendants argue that the lyrics do not describe anything Mr. Graham or the other defendants actually did.

By way of background, defendants cite to scholarly writings and law review articles describing rap music as the artistic expression of young African American males who have been subjugated by the White race for hundreds of years. Rap lyrics are generally written in the first person, and are full of violent metaphors. The artists embrace a world of violence and crime, and the lyrics are social and political commentary on impoverished Black neighborhoods in inner cities. Seen in this way, the lyrics are artistic expression, the same as other forms of literature.

Defendant argues that African American males are the only group of citizens to have their own unique form of artistic expression used against them in criminal trials. Defendant urges the court to conduct a constitutional analysis independent of that implicated by evidentiary rules.

I. First Amendment

The First Amendment guarantees that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. First Amendment protection extends to music "as a form of expression and communication." *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989). But while the "First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent[,]" *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993), it does bar the admission

of evidence relating to a defendant's "abstract beliefs . . . when those beliefs have no bearing on the issue being tried." *Dawson v. Delaware*, 503 U.S. 159, 165, 168 (1992). "The crucial question is whether the evidence at issue [is] used for permissible purposes or merely to show that [the defendant] was morally reprehensible due to his abstract beliefs." *United States v. Fell*, 531 F.3d 197, 229 (2d Cir. 2008) (citation omitted).

In a RICO conspiracy case in this district involving a member of the Bounty Hunter Bloods gang, the court held that a First Amendment argument to exclude rap lyrics was without merit. *United States v. Garnes*, 14-20119, 2015 WL 3574845, at *2 n.1 (E.D. Mich. June 5, 2015). The Court rejected the First Amendment argument and the applicability of *Dawson v. Delaware*, explaining, "[u]nlike in *Dawson*, Defendant's lyrics will be relevant to the issues being decided in the proceeding (i.e., his membership in the Bounty Hunters gang.) If they are not relevant, then they will be excluded regardless under the Federal Rules of Evidence." *Id*. The court quoted a Second Circuit case as persuasive authority, which also addressed whether admission of rap lyrics in a gang trial violates the First Amendment: "This challenge is meritless, however, because here the speech is not itself the proscribed conduct. The speech was not the basis for the prosecution, but instead it was used to establish the existence of,

and [the defendant's] participation in, the alleged RICO enterprise." *United States v. Pierce*, No. 13-3687, 2015 WL 2166141, at *6 (2d Cir. May 11, 2015). See also, *United States v. Herron*, No. 10-615, 2014 WL 1871909, at *2-3 (E.D.N.Y. May 8, 2014) (rejecting defendant's argument on First Amendment grounds for preclusion of rap-related videos in a racketeering case in which the enterprise involved murders, drug distribution conspiracy, and firearms offenses).

The government argues that it seeks to offer the Rap Tracks as direct evidence of the existence of the racketeering enterprise, the defendants' history with that enterprise, its members, and associates, the relationship of trust between its members, the unlawful possession and use of firearms, the use and threatened use of violence against its enemies and "snitches," and the fact that the defendants committed specific crimes to further the goals of the enterprise.

The government gives examples where the Rap Tracks discuss actual events, rather than abstract beliefs:
- In HardWork Jig ft. Cocaine Sonny - "OG" which was posted on YouTube on December 15, 2015, co-defendant Bailey, a/k/a "Cocaine Sonny," raps about beating a murder charge: "aint nobody seen but they all heard it … not guilty was the damn verdict." On December 1, 2010, a jury found

Bailey not guilty of a 2009 murder of Ronald Calloway. (Overt Act 75). In the same video, co-defendant Hendrix raps about how he and defendant Arnold were some of the first SMB members to do prison time. This is true. On January 9, 2006, a jury convicted Hendrix of assault with a dangerous weapon and he was sentenced to 32-48 months. On July 27, 2007, Arnold was sentenced to 47-180 months for his convictions of felon in possession of a firearm, assault with intent to commit great bodily harm, carrying a concealed weapon, and felony firearm.

- In HardWork Jig - "Welcome to HOB City Intro," posted to YouTube March 8, 2013, Hendrix sings about being from the RedZone where "we are quick to shoot," drug dealing out of "trap" houses, how everyone in the neighborhood is "claiming red", how people are "flipping pills," another person sings "scripts" in the background, indicating that "Rome" (defendant Gooch, who is standing behind Hendrix) taught Hendrix how to make money selling this way, and how a SMB member "caught a body" and then showing actual news coverage of the trial and guilty verdict of Ihab Masalami, who was convicted of murder in 2010 (Indictment para. 2). The beginning of the video shows the "neighborhood" with footage of street signs in the RedZone, numerous firearms being possessed (charged in

Count 32), and several co-defendants, including Jerome Gooch, Derrick Kennedy and deceased SMB member Devon McClure.

- In Betrayal: Stop Bleekin - Bleek, RO Da Great, posted on YouTube July 28, 2014, co-defendant Robert Brown raps about "bleekin," which the enterprise members use as slang for "snitching" or talking to the police. In the track, Brown tries to intimidate witnesses from testifying, saying he will kill them, which is both "manner and means" as well as charged racketeering activity in the Indictment. The rap refers to SMB member nicknamed "Bleek," who was a SMB member suspected of being a cooperator. The government avers that these lyrics are probative of the allegations of witness intimidation. The track "Welcome to HOB City Intro" also refers to how "Bleek turned snitch, he had to break the rules." This comparison will help a jury determine whether the enterprise exists because different people identify the same person and state that he broke the rules. Rules are indicia of an identifiable group who agree to act in a certain way.

Citing to the Supreme Court case *Snyder v. Phelps*, 562 U.S. 443 (2011), defendant argues that the Rap Tracks are speech on matters of public concern, and therefore protected by the First Amendment. To be considered a matter of public concern, speech must be "fairly considered

as relating to any matter of political, social, or other concern to the community," or "a subject of legitimate news interest; that is a subject of general interest and of value and concern to the public." *Id.* at 453.

To determine whether speech is of private or public concern, the court must make an independent examination of all the circumstances of the speech to analyze the "content, form, and context" of the speech. *Id.* at 444. In *Snyder*, the Supreme Court found vile speech directed at homosexuality at a military funeral as discussing issues of public import even though they contained words directed specifically and personally against the soldier being buried. Defendant argues that here the rap lyrics discuss issues of public import like urban crime and violence, drug wars and the lack of hope in inner cities. However, *Snyder* addressed a civil lawsuit seeking to hold the members of a church liable for the content of, and harm caused by, their speech. Here, the government is not seeking to punish defendants because of the content of the speech; rather the speech is being introduced as evidence of independent criminal behavior.

Defendant next cites to the Supreme Court case *Dawson v. Delaware*, which found constitutional error in the admission of evidence at sentencing concerning defendant's membership in the Delaware branch of the Aryan Brotherhood. The Court held that the government failed to

demonstrate that the Delaware branch held any racist beliefs, and that, in any event, there was no evidence the crime was motivated by racial animus. 503 U.S. 159, 160, 166 (1992). Contrary to what defendant argues, *Dawson* does not hold that the First Amendment precludes the use of public speech, or the fact of a defendant's association with a criminal enterprise, as evidence in a criminal proceeding. Rather, the Court found the evidence to be nothing more than the abstract beliefs of the Delaware chapter, and possible also of defendant Dawson. On that basis, the Court concluded that Dawson's First Amendment rights were violated by the admission of the Aryan Brotherhood evidence at sentencing. The Court went on to state that "Delaware might have avoided this problem if it had presented evidence showing more than mere abstract beliefs on Dawson's part, but on the present record one is left with the feeling that the Aryan Brotherhood evidence was employed simply because the jury would find these beliefs morally reprehensible." *Id.* at 167.

The court finds that the lyrics on the Rap Tracks are not merely abstract beliefs of the defendants, because the government has tied the lyrics to the actions of the defendants. The issue, rather, is whether the Rap Tracks are admissible under the Federal Rules of Evidence.

II. Federal Rules of Evidence

    A. Non-Hearsay

The government contends that it will offer certain statements on the Rap Tracks not for their truth or falsity, but simply because of the fact that they were made. Such statements are admissible non-hearsay. Fed.R.Evid. 801(c).

    B. Hearsay Exceptions

Some lyrics will be offered for the truth of the matter asserted. The government contends that because all six co-defendants in Trial Group #1[1] have appearances in the Rap Tracks and are seen participating by wearing gang colors, making gang signs, throwing money and singing along to the lyrics in the videos, it shows their adoption and belief in the statements. To the extent this is true, the Rap Tracks are admissible under Fed.R.Evid. 801(d)(2)(A) as admission of a party opponent and (B) as adopted statements.

The Rap Tracks may also be admissible as co-conspirator statements made in the course of and in furtherance of the RICO conspiracy. Fed.R.Evid. 801(d)(2)(E). The Rap Tracks were made by co-

---

[1] Since this motion was filed and argued, defendant Devon Patterson has been moved to Trial Group #2.

conspirators and posted to YouTube from 2013 to 2016, which is during the timeframe of the conspiracy alleged in the Indictment. The government argues that the Rap Tracks portray the purposes of the SMB enterprise and the means the enterprise uses to accomplish it, including committing murder, robbery, assaults with firearms, witness intimidation, and drug trafficking. Therefore, if supported by the evidence at trial, the Rap Tracks are admissible under Rule 801(d)(2)(E). *See United States v. Norwood*, No. 12-20287, 2015 WL 2250481, at *10-11 (E.D. Mich. May 13, 2015) (J. Goldsmith) ("Norwood I").; *United States v. Norwood*, No. 12-20287, 2015 WL 2343970, at *11 (E.D. Mich. May 14, 2015) ("Norwood II") (finding that rap lyrics that "helped establish the existence of the enterprise, its members, and at least one of its alleged purposes and/or means and methods" were admissible as co-conspirator statements made in furtherance of a conspiracy pursuant to Rule 801(d)(2)(E)).

 C. <u>Rule 403 Prejudicial Effect Versus Probative Value</u>

  Federal Rule of Evidence 403 provides that relevant evidence may be excluded, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." However, "[u]nfair prejudice 'does not mean the

damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (quoting *United States v. Bonds*, 112 F.3d 540, 567 (6th Cir. 1993)).

Evidence of gang affiliation, although prejudicial to a defendant, can be sufficiently probative to survive a 403 challenge. *United States v. Williams*, 158 Fed. Appx. 651, 653-54 (6th Cir. 2005). The Sixth Circuit has held that evidence of gang affiliation is admissible to show participation in a drug conspiracy, *id.*, to establish a defendant's opportunity to commit a crime, *United States v. Johnson*, 102 F.3d 214, 221 (6th Cir. 1996), or where the interrelationship between people is central to the case, *Gibbs*, 182 F.3d at 430. However, gang evidence would be inadmissible if there is no connection between the evidence and the charged offense. *See United States v. Newsom*, 452 F.3d 593, 604 (6th Cir. 2006) (holding the danger of unfair prejudice substantially outweighed the probative value of gang tattoo evidence where the charge was felon in possession of a firearm).

The Sixth Circuit held rap lyrics about killing witnesses were admissible over evidence objections, including FRE 403. *See United States v. Stuckey*, 253 Fed. Appx. 468, 482-84 (6th Cir. 2007). The lyrics

involved described facts matching the crime charged: "Stuckey's lyrics concerned killing government witnesses and specifically referred to shooting snitches, wrapping them in blankets, and dumping their bodies in the street – precisely what the government accused Stuckey of doing to Darbins in this case." *Id.* at 482. The Court explained that the evidence was admitted as "autobiographical statements of acts relevant to the case" to prove defendant had killed the victim and not to show his propensity toward violence. *Id.* at 483.

Judge Goldsmith held that rap videos posted online were admissible in a RICO conspiracy case because they "helped establish the existence of the enterprise, its members and at least one of its alleged purposes and/or means and methods: evading law enforcement by using threats and violence to dissuade witnesses from 'snitching.'" *Norwood II*, 2015 WL 2343970, at *11 (citation omitted).

The government argues that in this case the SMB Rap Tracks are highly probative and on-topic in that they tend to establish that defendants and co-conspirators belonged to the charged enterprise and engaged in conduct to further its purposes and goals. The Rap Tracks address defendants' involvement, knowledge, and intent by appearing together and discussing distributing narcotics, threatening witnesses, killing rival gang

members, protecting the RedZone, and earning respect as members of and in furtherance of the SMB Enterprise.

Defendant cites to the case of *United States v. Bey*, No. 16-290, 2017 WL 1547006, at *4 (E.D. Pa. Apr. 28, 2017). The defendant was charged with being a felon in possession of a firearm and the court held that the rap music evidence was inadmissible under FRE 404(b) because knowledge, absence of mistake, and intent were not at issue in the case. The court further found the probative value of the evidence was undercut because the evidence was undated, so it was not known if it was created at or near the time of defendant's arrest, and the government did not demonstrate that the music was autobiographical. *Id*. at *6-7. For example, the court noted that the government did not demonstrate that Bey actually carries pistols while in Porsches, had been shot in his chest, or has shot Jewish people, as the lyrics described. The lyrics contained inflammatory material that was found to be irrelevant to the case, including references to the Black mafia, Louis Farrakhan, John Dillinger and statements relating to the killing of Jews. None of the statements had a bearing as to whether Bey possessed a firearm on the date charged, while they definitely risked inflaming jurors.

The other case cited by defendant, *State v. Skinner*, 218 N.J. 496, 500 (2014), was a prosecution for attempted murder. The court analyzed the evidentiary issue under New Jersey's Rule 404(b) and held that the disturbing rap lyrics authored by the defendant were highly prejudicial evidence that bore "no probative value as to any motive or intent behind the attempted murder with which he was charged." The court went on to recognize that expressive forms of evidence may be admissible where such "writing reveals a strong nexus between the specific details of the artistic composition and the circumstances of the underlying offense for which a person is charged, and the probative value of that evidence outweighs its apparent prejudicial impact." *Id.*, *see also Norwood II*, 2015 WL 2343970, at *10-11.

The government describes the strong nexus between the SMB Rap Tracks, the underlying offenses, the existence of the SMB enterprise, and the defendants' association with the enterprise. The Rap Tracks relate to real-life events and include real media coverage about the SMB enterprise. "While it is true that the videos contain profanity, misogyny, and references to violence that viewers could find objectionable or shocking, it cannot be said that their content is 'more inflammatory' than the charged crimes – [] violent murders, narcotics trafficking, weapons possession, and other

criminal activity by the alleged enterprise." *Herron*, 2014 WL 1871909, at *5 (quotation omitted).

Before a rap video will be admitted, the government shall provide defendant and the court with the specific excerpt that it intends to present. The government shall restate the purpose for which the evidence is being offered and submit a transcript identifying the speakers in the clip. If being offered for their truth, statements of unidentified speakers who are not alleged to be co-conspirators shall be excluded as hearsay unless the government articulates a relevant exception under Rule 803. During the court's in camera review, the court will consider whether any hearsay statements are necessary to provide context for the admissible content. If the court is satisfied that the clip is limited to the relevant portions of the evidence, it will be admitted. The court may exclude as cumulative or redundant rap evidence that goes to a fact that has been firmly established by the government. The court may provide a limiting instruction to the jury that the evidence is not to be considered for any improper purpose. Of course, the defendants are free to argue the weight and meaning of the lyrics.

IT IS HEREBY ORDERED that defendant's motion to preclude the government's use of rap lyrics and rap videos at trial is DENIED.

So ordered.

Dated: December 21, 2017

                                       s/George Caram Steeh
                                       GEORGE CARAM STEEH
                                       UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 21, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---