UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

v.

D-5 QUINCY GRAHAM,

            Defendant.

_____/

Case No. 15-cr-20652

HON. GEORGE CARAM STEEH

**Offense:**
- Count One: RICO Conspiracy,
18 U.S.C. § 1962(d)

**Maximum Penalties:**
- 20 years imprisonment
- 3 years supervised release
- $250,000 fine

## RULE 11 PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant QUINCY GRAHAM and the United States Attorney for the Eastern District of Michigan ("the government") agree as follows:

1. **GUILTY PLEA**

   A. **Count of Conviction**

Defendant will enter a plea of guilty to **Count One** of the Sixth Superseding Indictment, which charges the defendant with RICO Conspiracy, in violation of 18 U.S.C. § 1962(d).

**B.**   <u>**Elements of Offense**</u>

The elements of Count One are:

1.      An enterprise, as that term is defined in 18 U.S.C. § 1961(4) and as identified in the Sixth Superseding Indictment as the Seven Mile Bloods, existed;

2.      The defendant was associated with the enterprise;

3.      The defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the enterprise;

4.      The defendant and at least one other conspirator agreed that the defendant or a conspirator would engage in a pattern of racketeering, that is, commit at least two acts of racketeering in furtherance of the enterprise— specifically, offenses involving distribution of controlled substances, in violation of 21 U.S.C. § 841 and 846; and

5.      The activities of the enterprise affected interstate or foreign commerce.

**C.**   <u>**Factual Basis for Guilty Plea**</u>

The following facts are a sufficient and accurate basis for defendant's guilty plea:  From in and around 2003 through in and around January 2018, in the Eastern District of Michigan and elsewhere, the Seven Mile Bloods, also known as "SMB," was a street gang that operated primarily on the east side of Detroit, Michigan,

specifically the area in and around Gratiot Avenue to the west, Kelly Road to the east, Eight Mile Road to the north, and Seven Mile Road to the south. SMB members have claimed this area as their territory and refer to it as the "Red Zone."

SMB members utilize a variety of unifying marks, manners, and identifiers, including "gang signs," clothing, and tattoos that are specific to the organization. Common symbols include the five-pointed star, a hand sign with all five fingers, or a crown with five points. The SMB also identify themselves with the number "55" and sometimes refer to themselves as "55 Crew" or "55 Grinch." SMB members also identify themselves with the number "762" (which represents the numbers on a telephone keypad corresponding to the letters S M B), and "19 13 2" (which represents the numerical order in the alphabet for the letters S M B). Members often tattoo themselves with these gang symbols. Many of the SMB symbols, clothing, and sayings attempt to differentiate the SMB from, or disrespect, their rivals. The SMB colors are predominantly red, and gang members often wear red clothing, hats, and bandanas.

The enterprise makes its money mainly through the sale and distribution of controlled substances, including cocaine, heroin, marijuana, codeine promethazine, and various prescription pills. SMB members sell these controlled substances within the "Red Zone," outside of vacant houses known as "trap houses." Within

the time period of the charged enterprise, higher-ranking SMB members would often sell drugs on the same block of Manning Street, sharing workers and firearms to distribute and protect their narcotics. SMB members also traveled to West Virginia, Ohio, Kentucky, and other states to sell controlled substances.

The defendant agrees that the SMB constitutes an enterprise, as that term is defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact. The defendant further agrees that he was a member of "55 Crew" and that he was associated with the SMB enterprise.

The defendant also agrees that he and at least one other conspirator agreed that the defendant or a conspirator would engage in at least two acts of racketeering in furtherance of the enterprise—specifically, at least two offenses involving distribution of controlled substances. From in and around 2006 through in and around August 2015, the defendant and other SMB enterprise members engaged in the distribution and possession with the intent to distribute narcotics within the "Red Zone" in Detroit. Also during that time period, the defendant worked with other SMB enterprise members to both transport prescription controlled substance pills— specifically OxyContin and/or Roxicodone—from Detroit to West Virginia, and then illegally distribute and sell the pills in West Virginia. The defendant further agrees that during the course and in furtherance of the conspiracy, the defendant was

4

personally involved in the distribution of, or it was reasonably foreseeable to the defendant that his co-conspirators distributed, at least 4,000 oxycodone (30 mg) pills.

**2.     SENTENCING GUIDELINES**

    **A.     Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence.

    **B.     Agreed Guideline Range**

There are no sentencing guideline disputes.   Except as provided below, defendant's guideline range is **84 – 105 months**, as set forth on the attached worksheets.   If the Court finds:

      1.  that defendant's criminal history category is higher than reflected on the attached worksheets, or

      2.  that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than **84 – 105 months**, the higher guideline range becomes the **agreed range**.   However, if the Court

finds that defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does not authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different from any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections 1) and 2), above.

## 3.   SENTENCE

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

### A.   Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the United States and the defendant agree that a sentence of **not greater than 84 months** of imprisonment is the appropriate disposition of the case.   The parties further agree that this binding sentencing cap of 84 months takes into consideration, and accounts for, the fact that defendant has already been sentenced to and served 27 months of imprisonment for his conviction for felon in possession of a firearm in Eastern District of Michigan case number 15-cr-20546.   Finally, the parties further agree

and understand that, pursuant to 18 U.S.C. § 3585(b), defendant will receive credit from the Bureau of Prisons towards the service of his sentence in the instant case for the time he has served in detention on the instant case—that is, for the time he has served in pretrial detention from the end date of his sentence in case number 15-cr-20546 up to the date his sentence commences in the instant case.

### B. Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release.   In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is **three (3) years** on Count One.   The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

### C. Special Assessment

Defendant must pay a special assessment of **$100** at the time of sentencing.

### D. Fine

There is no agreement as to fines.

### E. Restitution

Restitution is not applicable to this case.

4.   **FORFEITURE**

Defendant agrees that he will not contest, or assist anyone else in contesting, the forfeiture of all of the firearms and ammunition, U.S. currency, and other personal property bearing any Seven Mile Bloods labeling, markings, logos or symbols, that were seized in connection with the investigation of this matter, to the extent that the government seeks forfeiture of such items in any forfeiture action or proceeding.

Specifically, the defendant agrees, pursuant to 18 U.S.C. § 924(d), to the forfeiture of the following firearms and ammunition:

(i) the .45 caliber Glock Model 30 pistol bearing serial number SCH704, and all ammunition seized from that pistol and from 1721 Claire Street, Charleston, West Virginia, on September 22, 2014; and

(ii) the .40 caliber Smith & Wesson Model SW40VE pistol bearing serial number RAL6511, and all ammunition seized from that pistol, on July 5, 2015.

With respect to the property covered by this agreement, defendant agrees to the entry of one or more orders of forfeiture of his interest in such property upon application by the United States at, or any time before, his sentencing in this case.

Defendant further agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure and forfeiture

of property covered by this agreement.

In entering into this agreement with respect to forfeiture, defendant knowingly, voluntarily, and intelligently waives any challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives his right to challenge any failure by the court to advise him of his rights with respect to forfeiture, set forth in Fed. R. Crim. P. 11(b)(1)(J). Defendant also expressly waives his right to have a jury determine the forfeitability of his interest in the above identified firearms as provided by Rule 32.2(b)(5) of the Federal Rules of Criminal Procedure.

Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, the above-identified property to the United States and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture. If any other person or entity has any interest in the property subject to forfeiture, Defendant will provide the government with the name and address of the person or entity that has an interest in, and/or

possession of, the asset, and assist the government in obtaining a release of interest from any such other person or entity.

Transfer of title, ownership, and interest will be completed prior to sentencing. Defendant will not transfer any interest in, or create any additional encumbrance on, any property representing the proceeds of, or involved in, his offense as alleged in Count One of the Sixth Superseding Indictment.   Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any forfeiture proceeding concerning forfeitable assets, if requested to do so by the government.

5.    USE OF WITHDRAWN GUILTY PLEA

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

6.    OTHER CHARGES

If the Court accepts this agreement, the government will dismiss Count Thirty-Two and Notice of Act with Enhanced Sentencing Eleven as applicable to this defendant in this case.

7.    **EACH PARTY'S RIGHT TO WITHDRAW FROM THIS AGREEMENT**

Defendant may withdraw from this agreement, and may withdraw his guilty

plea, if the Court decides to impose a sentence greater than **84 months** of

imprisonment.   This is the only reason for which defendant may withdraw from

this agreement.   The Court shall advise defendant that if he does not withdraw his

guilty plea under this circumstance, the Court may impose a sentence greater than

**84 months**.

8.    **WAIVER OF APPEAL**

Defendant waives any right he may have to appeal his conviction.   If the

sentence imposed does not exceed **84 months**, defendant also waives any right he

may have to appeal his sentence.   This waiver does not bar filing a claim of

ineffective assistance of counsel in court.

9.    **CONSEQUENCES OF WITHDRAWAL OF GUILTY PLEA OR VACATION OF CONVICTION**

If defendant is allowed to withdraw his guilty plea or if any conviction entered

pursuant to this agreement is vacated, the Court shall, on the government's request,

reinstate any charges that were dismissed as part of this agreement.   If additional

charges are filed against defendant within six months after the date the order vacating

defendant's conviction or allowing him to withdraw his guilty plea becomes final,

which charges relate directly or indirectly to the conduct underlying the guilty plea

or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 10.   COLLATERAL CONSEQUENCES OF CONVICTION

Defendant understands that his convictions here may carry additional consequences under federal and state law, including the potential loss of the right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields.   Defendant further understands that, if he is not a native-born citizen of the United States, there may be adverse immigration consequences resulting from conviction.   These include possible removal from the United States, denial of citizenship, denaturalization, denied admission to the United States in the future and other possible consequences.   Defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of defendant's conviction on any of these matters.   Defendant nevertheless affirms that he chooses to plead guilty regardless of any immigration consequences or other collateral consequences of his conviction.

## 11.   PARTIES TO PLEA AGREEMENT

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of

Michigan.

12.   **SCOPE OF PLEA AGREEMENT**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

13.   **ACCEPTANCE OF AGREEMENT BY DEFENDANT**

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by **2:00 P.M. on 9/13/2018**.   The government reserves the right to modify or revoke this offer at any time before the defendant pleads guilty.

MATTHEW SCHNEIDER
United States Attorney

_____
Eric Straus
Chief,
Violent & Organized Crime Unit
Assistant United States Attorney

_____
Rajesh Prasad
Assistant United States Attorney
Drug Task Force Unit

_____
William Sloan
Assistant United States Attorney
Violent & Organized Crime Unit

Date: ___9/10/2018___

By signing below, defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms.   He also acknowledges that he is satisfied with his attorney's advice and representation.   Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.

_____
Michael A. Rataj
Attorney for Defendant

_____
Quincy Graham
Defendant

Date: ___9-13-18___

14

## WORKSHEET A

# OFFENSE LEVEL

Defendant __D-5 Quincy Graham__                           District/Office __Eastern District of Michigan__

Docket Number __15-cr-20652__

Count Number(s) __1__                    U.S. Code Title & Section __18__ : __1962(d)__ ; ___ : ___

*Guidelines Manual* Edition Used: 20__16__ (*Note*: The Worksheets are keyed to the November 1, 2016 *Guidelines Manual*)

### INSTRUCTIONS

Complete a separate Worksheet A for each count of conviction or as required in a situation listed at the bottom of Worksheet B.*
*Exceptions*: Use only a single Worksheet A where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (*see* §3D1.2(d)) or where a count of conspiracy, solicitation, or attempt is grouped with a substantive count that was the sole object of the conspiracy, solicitation, or attempt (*see* §3D1.2(a) & (b)).

### 1. Offense Level (See Chapter Two)

Enter the applicable base offense level and any specific offense characteristics from Chapter Two and explain the bases for these determinations. Enter the sum in the box provided.

| Guideline | Description | Level |
|---|---|---|
| 2D1.1(c)(6) | Drug quantity ≥ 700 kg but < 1,000 kg MJ equivalent (≥ 4,000 pills Oxy 30 mg) | 28 |
| _____ | _____ . _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

If the Chapter Two guideline requires application of a cross reference or other reference, an additional Worksheet A may be needed for that analysis. *See* §1B1.5.

Sum [ ]

### 2. Victim-Related Adjustments (See Chapter Three, Part A)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

§_____ [ ]

### 3. Role in the Offense Adjustments (See Chapter Three, Part B)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (–) sign in front of the adjustment. If no adjustment is applicable, enter "0".

§_____ [ ]

### 4. Obstruction Adjustments (See Chapter Three, Part C)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

§_____ [ ]

### 5. Adjusted Offense Level

Enter the sum of Items 1–4. If this Worksheet A does not cover all counts of conviction or situations listed at the bottom of Worksheet B, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

[ 28 ]

---

[ ] Check here if **all** counts (*including* situations listed at the bottom of Worksheet B)* are addressed on this one Worksheet A. If so, no Worksheet B is used.

[ ] If the defendant has no criminal history, enter "I" here and on Worksheet D, Item 4. No Worksheet C is used.

## WORKSHEET B

# MULTIPLE COUNTS*

Defendant __D-5 Quincy Graham__          Docket Number __15-cr-20652__

### INSTRUCTIONS

**STEP 1:** Determine if any of the counts group under §3D1.2(a)–(d) ("the grouping rules"). All, some, or none of the counts may group. Some of the counts may have already been grouped in the application under Worksheet A, specifically: (1) counts grouped under §3D1.2(d); or (2) a count charging conspiracy, solicitation, or attempt that is grouped with the substantive count of conviction (*see* §3D1.2(a)). Explain the reasons for grouping:

_____

_____

_____

**STEP 2:** Using the box(es) provided below, for each group of "closely related counts" (*i.e.*, counts that group together under any of the four grouping rules), enter the highest adjusted offense level from Item 5 of the various Worksheets "A" that comprise the group. *See* §3D1.3. Note that a "group" may consist of a single count that has not grouped with any other count. In those instances, the offense level for the group will be the adjusted offense level for the single count.

**STEP 3:** Enter the number of units to be assigned to each group (*see* §3D1.4) as follows:
- One unit (1) for the group of counts with the highest offense level
- An additional unit (1) for each group that is equally serious or 1 to 4 levels less serious
- An additional half unit (1/2) for each group that is 5 to 8 levels less serious
- No increase in units for groups that are 9 or more levels less serious

| | |
|---|---|
| **1. Adjusted Offense Level for the First Group of Counts** | |
| Count number(s) _____ | [ ] _____ Unit |
| **2. Adjusted Offense Level for the Second Group of Counts** | |
| Count number(s) _____ | [ ] _____ Unit |
| **3. Adjusted Offense Level for the Third Group of Counts** | |
| Count number(s) _____ | [ ] _____ Unit |
| **4. Adjusted Offense Level for the Fourth Group of Counts** | |
| Count number(s) _____ | [ ] _____ Unit |
| **5. Adjusted Offense Level for the Fifth Group of Counts** | |
| Count number(s) _____ | [ ] _____ Unit |
| **6. Total Units** | |
| | _____ **Total Units** |

**7. Increase in Offense Level Based on Total Units** (See §3D1.4)

| 1 unit: | no increase | 2½ – 3 units: | add 3 levels | [ ] |
|---|---|---|---|---|
| 1½ units: | add 1 level | 3½ – 5 units: | add 4 levels | |
| 2 units: | add 2 levels | More than 5 units: | add 5 levels | |

**8. Highest of the Adjusted Offense Levels from Items 1–5 Above**

[ ]

**9. Combined Adjusted Offense Level** (See §3D1.4)

Enter the sum of Items 7 & 8 here and on Worksheet D, Item 1.   [ ]

*Note: Worksheet B also includes applications that are done "as if there were multiple counts of convictions," including: multiple-object conspiracies (*see* §1B1.2(d)); offense guidelines that direct such application (*e.g.*, §2G2.1(d)(1) (Child Porn Production)); and stipulations to additional offenses (*see* §1B1.2(c)). Note also that these situations typically require the use of multiple Worksheets A.

| WORKSHEET C |
|:---:|

# CRIMINAL HISTORY
## [Page 1 of 2]

Defendant <u>D-5 Quincy Graham</u>                  Docket Number <u>15-cr-20652</u>

> *Note:* As an aid, some of the basic criminal history "rules" are listed below. However, there are numerous additional criminal history rules at §§4A1.1 and 4A1.2 that must be used with Worksheet C and for correct application.

**Enter the Earliest Date of the Defendant's Relevant Conduct** _____
(The date of *the defendant's commencement of the instant offense*(s))

### 1.  Prior Sentences Resulting from Offenses Committed Prior to the Defendant's 18th Birthday

(a) **3 Points** if convicted as an *adult*, for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(d)(1) & (e)(1).

(b) **2 Points** for each prior *adult or juvenile sentence* of confinement of *at least 60 days* not counted under §4A1.1(a) imposed within 5 years or from which the defendant was released from confinement within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(d)(2)(A).

(c) **1 Point** for each prior *adult or juvenile sentence* not counted under §4A1.1(a) or §4A1.1(b) imposed within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(d)(2)(B).

*Note:* Identify as "**adult**" any sentence exceeding one year and one month that resulted from an adult conviction.
A **release date** is required in only two instances: (1) when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period; or (2) when a sentence counted under §4A1.1(b) was imposed more than 5 years prior to *the defendant's earliest date of relevant conduct*, but release from confinement occurred within 5-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |

### 2.  Prior Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday

(a) **3 Points** for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(e)(1).

(b) **2 Points** for each prior sentence of imprisonment of *at least 60 days* not counted under §4A1.1(a) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(e)(2).

(c) **1 Point** for each prior sentence not counted under §4A1.1(a) or §4A1.1(b) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(e)(2).

*Note:* A **release date** is required when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| 9/19/2006 | Narcotic/drug violation | $100 fine | | 4A1.1(c) | 1 |
| 2/15/2006 | PWID over 50 g cocaine | 2 yrs probation | | 4A1.1(c) | 1 |
| 10/30/2008 | Operating while intoxicated | 12 months probation | | 4A1.1(c) | 1 |
| 8/29/2013 | Narcotic/drug violation | $355 fine | | 4A1.1(c) | 1 |

# Worksheet C — Criminal History [Page 2 of 2]

Defendant _D-5 Quincy Graham_                    Docket Number _15-cr-20652_

(continued from *Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday*)

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| 10/1/2014 | DUI | $335 fine | | 4A1.1(c) | 1 |
| 10/4/2016 | Felon in possession firearm | 27 m. prison, 2 yrs S.R. | | 4A1.1(a), 2E1.1 n.4 | 3 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**3.  Sum of Criminal History Points for prior sentences under §4A1.1(a), (b), & (c) in Items 1 & 2**

A total of 4 points can be added for all the 1-Point sentences counted in Items 1 & 2 combined.          | 7 |

**4.  "Status" of Defendant at Time of Instant Offense**

**2 Points** for "status" if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence (*e.g.*, probation, parole, supervised release, imprisonment, work release, or escape status) for a sentence counted in Items 1 or 2. *See* §4A1.1(d) and Application Note 4. List the type of control and identify the counted sentence that resulted in the control. Otherwise, enter **0 Points**.          | 2 |

_____

_____

**5.  Crimes of Violence**

**1 Point** for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under §4A1.1(a), (b), or (c) because such sentence was counted as a single sentence which also included another sentence resulting from a conviction for a crime of violence. A total of 3 points can be added under this subsection. *See* §4A1.1(e) and Application Note 5, §4A1.2(a)(2) & (p). Identify the crimes of violence and briefly explain why the cases are considered a single sentence. Otherwise, enter **0 Points**.          | |

_____

_____

**4.  Total Criminal History Points** (Sum of Items 3–5)          | 9 |

**5.  Criminal History Category** (Enter here and on Worksheet D, Item 4)

| Total Points | Criminal History Category |
|---|---|
| 0–1 | I |
| 2–3 | II |
| 4–6 | III |
| 7–9 | IV |
| 10–12 | V |
| 13 or more | VI |

| IV |

## WORKSHEET D

# DETERMINING THE SENTENCE

[Page 1 of 4]

Defendant **D-5 Quincy Graham**          Docket Number **15-cr-20652**

---

**1. Adjusted Offense Level** (From Worksheet A or B)

If Worksheet B is required, enter the result from Worksheet B, Item 9. Otherwise, enter the result from Worksheet A, Item 5.

**28**

**2. Acceptance of Responsibility** (See Chapter Three, Part E)

Enter the applicable reduction of **2** or **3** levels. If no adjustment is applicable, enter "0".

**– 3**

**3. Offense Level Total** (Item 1 less Item 2)

**25**

**4. Criminal History Category** (From Worksheet A or C)

Enter the result from Worksheet C, Item 8, unless the defendant has no criminal history, and as directed at the bottom of Worksheet A, no Worksheet C is used and "I" is entered here.

**IV**

**5. Terrorism; Career Offender; Criminal Livelihood; Armed Career Criminal; Repeat and Dangerous Sex Offender** (See Chapter Three, Part A, and Chapter Four, Part B)

**a. Offense Level Total**

If the provision for Career Offender (§4B1.1), Criminal Livelihood (§4B1.3), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in an offense level total higher than Item 3, enter the offense level total. Otherwise, enter "N/A".

**b. Criminal History Category**

If the provision for Terrorism (§3A1.4), Career Offender (§4B1.1), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in a criminal history category higher than Item 4, enter the applicable criminal history category.  Otherwise, enter "N/A".

**6. Guideline Range from Sentencing Table**

Enter the applicable guideline range from Chapter Five, Part A, in months.

**84**    **to 105**

**7. Restricted Guideline Range** (See Chapter Five, Part G)

If the statutorily authorized maximum sentence or the statutorily required minimum sentence restricts the guideline range (Item 6) (see §§5G1.1 and 5G1.2), enter either the restricted guideline range or any statutory maximum or minimum penalty that would modify the guideline range. Otherwise, enter "N/A".

**to**

☐ Check here if §5C1.2 (Limitation on Applicability of Statutory Minimum Penalties in Certain Cases) and 18 U.S.C. § 3553(e) – "The Safety Valve" – are applicable.

**8. Undischarged Term of Imprisonment; Anticipated State Term of Imprisonment** (See §5G1.3)

☐ If the defendant is subject to an undischarged term of imprisonment, or an anticipated state term of imprisonment, check this box. Below list the undischarged/anticipated term(s), the applicable section of §5G1.3 and its direction or guidance as to whether the instant federal sentence is to be imposed to run concurrently or consecutively to the undischarged/anticipated term(s), and any sentence adjustment.

---

# Worksheet D — Determining the Sentence [Page 2 of 4]

Defendant _D-5 Quincy Graham_    Docket Number _15-cr-20652_

## 9. Sentencing Options (See Chapter Five, Sentencing Table and §§5B1.1(a) and 5C1.1)

Check the applicable box that corresponds to the Guideline Range entered in Item 6 or Item 7, if applicable.

**Zone A** (See §§5B1.1(a)(1) & 5C1.1(a) & (b))

☐  If checked, the following options are available:

- Fine (See §§5C1.1(b) & 5E1.2(a))
- "Straight" Probation (See §§5B1.1(a)(1) & 5C1.1(b))
- Imprisonment (See §5C1.1(a) & (c)(1))

**Zone B** (See §§5B1.1(a)(2) & 5C1.1(a) & (c))

☐  If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (c)(2))
- Imprisonment of *at least one month plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(c)(2))
- Probation with a condition that substitutes intermittent confinement, community confinement, or home detention for imprisonment (See §§5B1.1(a)(2) and 5C1.1(c)(3))

**Zone C** (See §5C1.1(a) & (d))

☐  If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (d)(1))
- Imprisonment of *at least one-half of the minimum term plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(d)(2))

**Zone D** (See §5C1.1(a) & (f))

☑  If checked, *the minimum term is to be satisfied by* a sentence of imprisonment

## 10. Length of Term of Probation (See §5B1.2)

If probation is imposed, the guideline for the length of such term of probation is: (Check the applicable box)

☐  At least one year, but not more than five years if the offense level total is 6 or greater.

☐  No more than three years if the offense level total is 5 or less.

# Worksheet D — Determining the Sentence [Page 3 of 4]

Defendant  D-5 Quincy Graham                          Docket Number  15-cr-20652

## 11. Supervised Release (See §§5D1.1 and 5D1.2)

**a. Imposition of a Term of Supervised Release:**

☐ Ordered because required by statute (See §5D1.1(a)(1)).

☑ Ordered because a sentence of imprisonment of more than one year is imposed (See §5D1.1(a)(2)).

☐ Is *not* ordered although a sentence of more than one year is imposed, because it is not required by statute *and* the defendant likely will be deported after imprisonment (See §5D1.1(c)).

☐ Ordered because it may be ordered in any other case (See §5D1.1(b)).

**b. Length of Term of Supervised Release**

Check the Class of the Offense:

☐ Class A or B Felony: Two to Five Year Term (See §5D1.2(a)(1))

☑ Class C or D Felony: One to Three Year Term (See §5D1.2(a)(2))

☐ Class E Felony or Class A Misdemeanor: One Year Term (See §5D1.2(a)(3))

☐ If a statutorily required mandatory minimum term of supervised release for the offense impacts the guideline range for the applicable Class of Offense above, also check this box, and list the statutory minimum term (See §5D1.2(c)):

_____ years mandatory minimum term of supervised release

☐ If an offense in 18 U.S.C. § 2332b(g)(5)(B) that resulted in, or created a foreseeable risk of, death or serious bodily injury to another person; or if a sex offense, the term of supervised release will not be less than the minimum term established above, and may be up to life (See §5D1.2(b)).

Policy Statement: If a sex offense, the *statutory maximum term* of supervised release is recommended.

## 12. Restitution (See §5E1.1)

a. If restitution is applicable, enter the amount. Otherwise enter "N/A" and the reason:

N/A

b. Enter whether restitution is statutorily mandatory or discretionary:

c. Enter whether restitution is by an order of restitution, or *solely* as a condition of supervision. Enter the authorizing statute:

# Worksheet D — Determining the Sentence [Page 4 of 4]

Defendant  D-5 Quincy Graham          Docket Number  15-cr-20652

## 13. Fines (The Guideline Range for Fines for Individual Defendants) (See §5E1.2)

|  |  | Minimum | Maximum |
|---|---|---|---|
| **a.** | **Special Fine Provisions** | | |
|  | ☐ Check box if any of the counts of conviction is for a statute with a special fine provision. (This *does not* include the general fine provisions of 18 USC § 3571(b)(2) & (d)). | | |
|  | Enter the sum of statutory maximum fines for all such counts. | | $ 250,000 |
| **b.** | **Fine Table (§5E1.2(c)(3))** | | |
|  | Enter the minimum and maximum fines. | $ 20,000 | $ 200,000 |
| **c.** | **Fine Guideline Range** | | |
|  | (Determined by the minimum of the Fine Table (Item 15(b)) and the greater maximum above (Item 15(a) or 15(b))). | $ 20,000 | $ 250,000 |
| **d.** | **Ability to Pay** | | |
|  | ☐ Check this box if the defendant does not have an ability to pay. | | |

## 14. Special Assessments for Individual Defendants (See §5E1.3)

Enter the total amount of the statutory special assessments required for all counts of conviction:
- $100 for each felony count of conviction.
- $25 for each Class A misdemeanor count of conviction.
- While not subject to guideline sentencing, the special assessments for a Class B misdemeanor, and a Class C misdemeanor or infraction are $10 and $5 per count, respectively.

**TOTAL:**          $ 100

## 15. Factors That May Warrant a *Departure* (See §1B1.1(b))

Consider Chapter Five, Part H (Specific Offender Characteristics) and Part K (Departures), and other policy statements and commentary in the *Guidelines Manual* that might warrant consideration in sentencing. (*See also* the "List of Departure Provisions" included in the *Guidelines Manual* after the Index).

## 16. Factors That May Warrant a *Variance* (See §1B1.1(c))

Consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole.

Completed by  AUSA William Sloan          Date  9/10/2018