UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NUMBER 15-cr-20652

-v-        HON. GEORGE CARAM STEEH

D-5 QUINCY GRAHAM,

        Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

    Quincy Graham is a long-standing, older, member of the Seven Mile Bloods [SMB] – identified as part of the "55 Crew," as far back as 2004. Since 2005, Graham possessed and distributed narcotics in both Detroit, in the Redzone, and in West Virginia, often with SMB members. And while the government's investigation did not indicate that Graham was a shooter during the violent summer of 2015 after the murder of his friend, SMB leader Devon McClure, a.k.a. "Block," Graham was willing to provide ammunition to D-1 Billy Arnold and was arrested illegally possessing a gun himself. Graham faces punishment for his long-term involvement with the SMB RICO conspiracy with advisory guidelines of 84 to 105 months incarceration. The United

1

States recommends a sentence of 84 months on Count One.

## I. STATEMENT OF FACTS

On September 13, 2018, Quincy Graham pleaded guilty to Count One, RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d). His Rule 11 plea agreement included an agreed upon guideline range of 84 to 105 months. The government agreed to cap the sentence at 84 months pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The government also agreed that Graham will receive credit from the Bureau of Prisons for the time under pre-trial detention in this case, after the end of his sentence on 15-cr-20546.

The government concurs with the recitation of facts provided in the Probation Department's Presentence Investigation Report [PSR] in pages nine through twelve. Nonetheless, certain aspects of the defendant's conduct merit further discussion. First, as charged in Overt Act 40, on September 22, 2014, police officers executed a search warrant at a house in Charleston, West Virginia, and found Graham inside with over $1,000 cash on his person, along with approximately 330 pills of Oxycodone 30 mg and a loaded .45 caliber Glock pistol, which co-defendant Gooch subsequently admitted belonged to him.

Next, as charged in Overt Act 14, Graham was arrested on July 5, 2015, for a DUI and Felon in Possession of a Firearm. He admitted possessing the gun—a .40 caliber handgun, loaded with 12 rounds. Originally charged with state charges, Graham potentially faced an additional felony charge for a third DUI offense. Graham was found asleep as the driver of a still running vehicle that had struck a tree and crashed into bushes behind a McDonald's restaurant. He blew a 0.15 BAC on a portable breathalyzer. Graham had two prior DUI convictions, one each in Michigan and West Virginia.

Also, as detailed during the first SMB trial (January to March 2018), the government's trial evidence showed that Graham agreed to procure specific ammunition for Billy Arnold. Arnold, D-3 Eugene Fisher, and D-6 Robert Brown were charged with shooting at three people inside a car on May 10, 2015 in counts twenty-five through twenty-seven. (R. 812, Sixth Superseding Indictment, PgID 4325-27). The jury in the second SMB trial (June to August 2018) convicted Brown of counts twenty-five and twenty-seven. (R. 1166, US v. Robert Brown, Verdict Form, PgID 15262-63). Officers found sixty plus fired casings at the scene on May 10 – including .223, .762 and .40 caliber

3

casings. (R. 861, SMB Trial 1 [TR 1], February 1, 2018, PgID 5457). The very next day, Arnold texted with Graham – listed as the contact "Life Dubbed" in Arnold's phone:

| 9910 | Inbox | From +12054757432 Life Dubbed * | 5/11/2015 12:23:19 PM(UTC-4) | +12063130055 | Read | Ok cuz my otger fone on some bs |
| 9911 | Sent | To +12054757432 Life Dubbed * | 5/11/2015 12:22:38 PM(UTC-4) | | Sent | No doubt I need them one phones u be having |
| 9912 | Inbox | From +12054757432 Life Dubbed * | 5/11/2015 12:22:06 PM(UTC-4) | +14054720055 | Read | Ok we all needto change r numbers |
| 9913 | Sent | To 12054757432 Life Dubbed * | 5/11/2015 12:21:08 PM(UTC-4) | | Sent | 223s 40s 762 bullet s get at lease 3 of each |

(*Id.*, Exhibit 11dd, PgID 5456-57). Here, Arnold texted to Graham a specific request for the same caliber of ammunition as used on May 10, 2015. Graham readily agreed, texting back, "Ok" and then he followed with "we all need to change r [sic] numbers." Changing phone numbers, especially after a significant criminal event is common behavior for conspirators who want to evade law enforcement detection.

Finally, on May 13, 2015, Graham texted Arnold when rival gang members appeared:

| 9853 | Inbox | From +12054757432 Life Dubbed * | 5/13/2015 7:01:30 PM(UTC-4) | +14054720057 | Read | Naw im strap is cool thts hot out here im jus letting u knw |
| 9854 | Sent | To +12054757432 Life Dubbed * | 5/13/2015 7:00:35 PM(UTC-4) | | Sent | Want me up there |
| 9855 | Inbox | From +12054757432 Life Dubbed * | 5/13/2015 6:54:06 PM(UTC-4) | +12063130055 | Read | At benni snoop jus walked in |

(*Id.*, Exhibit 11cc, PgID 5455-56). After Arnold offered to come to Graham's aid, Graham declined because he was "strap[ped]," i.e.

4

carrying a gun. Even though the government's evidence does not show that Graham was a shooter in the summer of 2015, the evidence *does* clearly show that he was armed, willing to get ammunition for Arnold— the most violent SMB member at the time – and notified Arnold when rival gang members were around – when it was "hot."

## II. DEFENDANT'S PRIOR ARRESTS AND CONVICTIONS

The government concurs with the detailed recitation of the defendant's prior arrests and convictions as stated in the PSR Part B, pages thirteen through fifteen.

## III. THE ADVISORY GUIDELINE RANGE

The government concurs with the Probation department in calculating the advisory guideline range at 84 to 105 months on Count One. (*Id.*, ¶ 80). The government recognizes the dispute over the analysis of Application Note 4 from U.S.S.G. §2E1.1. The government agrees that Probation correctly applied 3 points for Graham's conviction for Felon in Possession of a Firearm pursuant to that provision. (PSR ¶ 50; see also PSR Addendum A-2 to A-4).

As the government recently argued in US v. Jerome Gooch, 15-cr-20652-07:

Typically, under U.S.S.G. § 4A1.2(a)(1), a "prior sentence" is "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense," and therefore a sentence for conduct that *is* part of the instant offense would not count as any criminal history points. However, under U.S.S.G. § 2E1.1, the applicable guideline provision for RICO, a defendant's prior convictions are treated differently. Specifically, Application Note 4 to that provision provides:

> Certain conduct may be charged in the count of conviction as part of a "pattern of racketeering activity" even though the defendant has previously been sentenced for that conduct. Where such previously imposed sentence resulted from ***a conviction prior to the last overt act of the instant offense***, treat as a prior sentence under §4A1.2(a)(1) and not as part of the instant offense.

U.S.S.G. § 2E1.1, App. Note 4 (emphasis added). In other words, "RICO presents an exception to the general rule of § 4A1.2(a)(1)," *United States v. Garecht*, 183 F.3d 671, 677 (7th Cir. 1999), and a sentence for conduct that is part of the instant offense—*i.e.*, conduct that is part of the pattern of racketeering activity—counts towards the criminal history score so long as the conviction for it occurred "prior to the last overt act of the instant offense."

6

First, the plain text of Application Note 4 is clear: so long as the defendant's conviction (that was part of the racketeering activity) occurred "prior to the last overt act of the instant [RICO] offense," that conviction is scored as a prior sentence for the criminal history calculation. It does not include any express limitation that such "last overt act" must be committed by, or otherwise personally involve, the defendant. In co-defendant Gooch's case, Probation interpreted the Note to require that Gooch be "accountable or involved" in an overt act that post-dates his conviction, *see* PSR Addendum at A-3, but the plain language of the Note contains no such restriction.

Second, persuasive appellate case law supports the government's straightforward reading of the Application Note. In *United States v. Marrone*, 48 F.3d 735, (3d Cir. 1995), defendant Paris, an associate of the Genovese Crime Family, appealed his sentence following his conviction for RICO conspiracy and other offenses, arguing that a RICO predicate act for which he was previously convicted should not have counted towards his criminal history score. *Id.* at 736. Specifically, Paris argued that Application Note 4 to § 2E1.1 did not apply and that his prior bribery sentence did not result "from a conviction prior to the

7

last overt act of the instant offense" because he had pleaded guilty to the bribery on a date *after* the date of the last overt act charged in the indictment. *Id*. at 739. The Third Circuit rejected his argument, finding that "Application Note 4 refers to the last overt act of the offense, not the last act charged in the indictment," and upheld the district court's finding that the last overt act of the offense was an act by Paris' *co-defendant*, Marrone. *Id*. at 739–40. Of particular relevance here, the Third Circuit specifically rejected Paris' claim that his *co-defendant's* overt act was not chargeable to him because it was not reasonably foreseeable, noting that "Application Note 4 *does not refer to the last act chargeable to the defendant*, and Paris has cited no authority to support such a requirement." *Id*. 739 n.6 (emphasis added).

Similarly, in *United States v. Benabe*, 436 Fed. App'x. 639, 2011 WL 3624961 (7th Cir. 2011), the Seventh Circuit addressed Application Note 4's provision allowing racketeering conduct for which a defendant has been sentenced to be counted in the criminal history as a prior sentence, noting that "[t]he *only requirement* for such treatment is that the conviction for the conduct *predate the last overt act of the charged conspiracy*." 436 Fed. App'x. at 661 (emphasis added). In that case,

8

defendant Susinka appealed his sentence for RICO conspiracy on various grounds, including arguing that his PSR improperly assigned criminal history points for predicate firearm and cocaine convictions that were part of the pattern of racketeering activity. The Court dismissed this claim, observing that defendant "Susinka was convicted of cocaine distribution and possession of a firearm in April 2002, and the [street gang] *Insane Deuces' racketeering activity continued well after that.*" *Id.* at 661 (emphasis added). *See also United States v. Robinson*, 354 Fed. App'x. 518, 521, 2009 WL 4249851 (2d Cir. 2009) ("where a prior conviction is charged as an overt act in support of a RICO conspiracy, and *is followed by additional overt acts*, a sentencing court may employ the prior conviction to support a finding of career offender status") (emphasis added). *But see United States v. Morales*, 655 F.3d 608, 639 (7th Cir. 2011) (addressing U.S.S.G. § 2E1.1 cmt. n. 4 and finding that "[b]ecause [defendant] was personally active in the racketeering conspiracy after the date of his most recent criminal conviction . . . the district court did not err in including these four sentences in his criminal history.").

9

Third, and finally, the government's reading of Application Note 4 is consistent with Congress's and the Sentencing Commission's unique treatment of racketeering offenses. As the Third Circuit noted in *Marrone*, "Congress did not intend RICO to be a substitute for the predicate offense, but instead intended to create separate offenses for the predicate acts and the substantive RICO charge." 48 F.3d at 738 (internal citation and quotation marks omitted). In that court's view, Application Note 4 was therefore consistent with Congress's intent because "[a]lthough a predicate act constitutes an element of a RICO violation, the previously convicted RICO offender is in effect a repeat offender who breaks the law once by committing a predicate act and again by engaging in a pattern of racketeering activity." *Id.* at 738.

Graham pleaded guilty on December 15, 2015 for the Felon in Possession of a firearm charge in Overt Act 14, the last overt act that specifically identifies Graham. However, co-defendants continued to commit <u>eight</u> Overt Acts in furtherance of the RICO conspiracy that were foreseeable to Graham on December 15, 2015 and thereafter. Graham was not ignorant of the violence and threats by SMB, especially towards witnesses. Overt Act 118 speaks specifically to a co-

10

defendant threatening a perceived cooperating witness. And, Overt Act 114 involves a Facebook post made by D-21 Martez Hicks on February 18, 2016, showing Quincy Graham holding a stack of US Currency.



(R. 861, TR I, February 1, 2018, PgID 5408; TR I, February 14, 2018, Exhibit 177, page 7).

At the sentencing of Jerome Gooch on February 7, 2019, this Court stated that it tended to agree with the government's legal analysis of Section 2E1.1, Application Note 4, but that under the specific circumstances of Gooch's case found that his last conviction should not be scored as three points. The government maintains that its analysis of 2E1.1 is sound pursuant to the plain reading of the guideline provision and case law from other circuits. This Court should adopt the PSR's criminal history calculation and assign 3 points for Graham's FIP conviction.

## IV. LAW AND ARGUMENT

A. NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT, 18 U.S.C. § 3553(a)(1).

1. <u>Nature and Circumstances of the Offense</u>.

The Court has presided over two trials detailing the SMB gang's racketeering activity. SMB has perpetrated shootings and violence, intimidated residents, and sowed fear on the east side of Detroit for well over a decade. What's more, SMB's narcotics distribution activities strike at the heart of the city of Detroit and the opioid epidemic in West Virginia. There is no justification for the territorial mindset and

willingness to combat fellow citizens whose only fault was living on the wrong mile road.

Quincy Graham was an older member of SMB, a "55." Photographs show Graham with fellow SMB members as far back as 2004:



(Exhibit 298w, TR 1, February 12, 2018, page 73). In the photograph are, left to right, Michael Rogers, Devon Patterson, Johnathan Murphy, Julian Patterson and Quincy Graham. (*Id.*). Graham actively joined and

13

promoted the harmful, violent culture perpetrated by his fellow gang members. Sometime between February 2015 and May 1, 2015, Billy Arnold took a video of several SMB members, including Graham and Devon McClure, free-style rapping. Graham, in the Piston's hat, proudly extolled the violence and peril for entering SMB's territory. This video belies any defense claim that Graham was simply a drug dealer, set apart from the gang's other, violent activities.



(Exhibit 6, TR 1, February 5, 2018, pages 6-8).

2. <u>History and Characteristics of the Defendant</u>.

The defendant has a long criminal history, book-ended by his two felony convictions over ten years apart. In the interim, Graham repeatedly continued his criminal behavior, whether in Michigan or West Virginia. He graduated from selling street-level amounts of cocaine in Detroit to transporting and selling hundreds of opioid pills in West Virginia. He has a history of failure to appear, failing to appear

14

for court three times. (15-20546, R. 20, Order Denying Defendant's Motion for Revocation of Detention, PgID 47). He has not had any verifiable employment. Graham has issues with alcohol abuse. His judgement has shown to be poor and dangerous.

B. THE SENTENCE IMPOSED MUST REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT, 18 U.S.C. §3553(a)(2)(A).

The guidelines properly reflect the seriousness of the offense. Graham's only meaningful incarceration has been his sentence for the Felon in Possession. The Court must sentence Graham for his decade of criminal activity.

C. THE SENTENCE IMPOSED MUST AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT, 18 §3553(a)(2)(B) AND (C).

Street gang activity, and transporting and selling opioids from Detroit to other states, is a rampant problem today. The Court should fashion a sentence for Graham sufficient to deter him from further criminal conduct and deter others from engaging in the same behavior.

D. AVOIDING UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT, 18 U.S.C. §3553(A)(6).

Eighty-four months does not create an unwarranted sentence disparity for defendants with similar records. Graham has a longer criminal history than co-defendant Jerome Gooch, and the Court sentenced Gooch to 75 months for similar activity. Moreover, as detailed above, there is greater evidence of Graham's knowledge of, and assistance to, Billy Arnold's violent conduct than there is for Gooch.

## V.  CONCLUSION

The government moves this Honorable Court to sentence the Defendant to 84 months on Counts One with the United States Bureau of Prisons for the reasons discussed above.

Respectfully submitted,

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

Rajesh Prasad
William Sloan
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone:  313-226-0821
E-Mail: Rajesh.Prasad@usdoj.gov

16

Dated: February 14, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on <u>February 14, 2019</u>, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Michael Rataj, Attorney for Defendant

<u>s/Rajesh Prasad</u>
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
Phone:  313-226-0821
E-Mail: Rajesh.Prasad@usdoj.gov